PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

v.

JOHN ALVIN ROE,

        *Defendant-Appellant.*

No. 08-5203

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Peter J. Messitte, Senior District Judge.
(8:07-cr-00549-PJM-1)

Argued: March 26, 2010

Decided: May 27, 2010

Before TRAXLER, Chief Judge, and GREGORY and
AGEE, Circuit Judges.

Affirmed by published opinion. Judge Agee wrote the majority opinion, in which Chief Judge Traxler joined. Judge Gregory wrote a dissenting opinion.

## COUNSEL

**ARGUED**: William A. Mitchell, Jr., BRENNAN, SULLIVAN & MCKENNA, LLP, Greenbelt, Maryland, for Appellant. Hollis Raphael Weisman, OFFICE OF THE UNITED

STATES ATTORNEY, Greenbelt, Maryland, for Appellee.
**ON BRIEF:** Timothy J. Sullivan, BRENNAN, SULLIVAN
& MCKENNA, LLP, Greenbelt, Maryland, for Appellant.
Rod J. Rosenstein, United States Attorney, Baltimore, Mary-
land, for Appellee.

---

**OPINION**

AGEE, Circuit Judge:

John Alvin Roe was convicted of one count of impersonat-
ing an officer or employee of the United States, in violation
of 18 U.S.C. § 912. On appeal, Roe contends the district court
erred in the admission of certain testimony, in determining the
sufficiency of the evidence, and in the giving of one instruc-
tion to the jury. Finding no error, we affirm the judgment of
the district court.

I.

In April 2008, a federal grand jury returned an indictment
charging Roe with one count of violating 18 U.S.C. § 912 by
"hold[ing] himself out to be a federal police officer and [iden-
tifying] himself as a federal police officer."[1] (J.A. 9.) Roe pled
not guilty and proceeded to a jury trial.

Viewed in the light most favorable to the Government,
*United States v. Seidman*, 156 F.3d 542, 547 (4th Cir. 1998),
the evidence adduced at trial showed the following: In the

---

[1]The indictment also charged Roe with one count of possession of a
false badge of an agency of the United States, in violation of 18 U.S.C.
§ 701. The district court subsequently granted Roe's motion for judgment
of acquittal as to that count. Because jeopardy had long since attached by
the time the district court did so, *United States v. Siegel*, 536 F.3d 306,
315 (4th Cir. 2008), the Government was statutorily prohibited from pur-
suing an appeal of that decision. *See* 18 U.S.C. § 3731.

early morning of November 9, 2007, Maryland State Police Corporal Terry Allen drove in an unmarked vehicle on the Baltimore-Washington Parkway ("Parkway"). Corporal Allen observed a Ford Crown Victoria "package" travelling in the left lane. Corporal Allen explained that by "package" he meant that the Ford bore certain indicators of an unmarked police vehicle, including emergency lights in the rear window, antennae, and a plain white body. When Corporal Allen first attempted to pass the Ford, the Ford's driver, later identified as Roe, "cut his interior lights on" and stared at Allen for "several seconds." (J.A. 35.) Corporal Allen testified he "thought [Roe] was going to pull [him] over, so [he] stayed slightly behind" the Ford instead of passing it. (J.A. 35.)

As the vehicles proceeded on the Parkway, Corporal Allen decided to telephone the United States Park Police ("Park Police") because the vehicles were approaching the jurisdictional line for the Maryland State Police and the Park Police. Allen had become suspicious that Roe was impersonating a police officer based on Roe's attire and conduct. During the course of the telephone call, Corporal Allen once more attempted to pass the Ford, at which time Roe activated his vehicle's siren. Upon hearing the siren, Corporal Allen "backed off." (J.A. 44.) A short time later, he again tried to pass the Ford, and upon doing so, heard Roe using the vehicle's loudspeaker to order him to slow down. Corporal Allen remained on the telephone with the dispatcher, who informed him that a Park Police unit was en route. Corporal Allen testified that as the vehicles came upon an interchange, the Ford "pulled in behind [him and] activated the actual [red and blue] emergency lights" "in the high windshield" of the Ford. (J.A. 46.) Believing the Ford "was actually going to pull [him] over," Corporal Allen "proceeded over to the shoulder" just past an exit ramp. (J.A. 46-47.) As he pulled over, the Ford took the ramp off the Parkway.

Corporal Allen testified that as he slowed along the shoulder, he noticed a Park Police vehicle follow the Ford onto the

ramp. He decided to back up his vehicle onto the ramp in order to provide the Park Police officer support.

United States Park Police Officer Adam Zielinski followed Roe off the Parkway ramp and initiated a traffic stop. Both Roe and Zielinski exited their respective vehicles. Roe was wearing a tactical police vest, black cargo pants, and a handgun in a holster. Zielinski pointed his service weapon at Roe and ordered him to stop moving and show his hands. Instead of obeying Zielinski, Roe continued "advancing on" Zielinski, saying, "I'm the police, I'm the police," and informing Zielinski he was a federal police officer. (J.A. 79.) Roe continued advancing, despite Zielinski's repeated command to stop. The third time Zielinski told him to stop, Roe obeyed, and then removed his wallet and showed Zielinski a gold badge with red and blue markings, containing a seal in its middle, the letters "N-A-S-A," and the word "police" on it. Zielinski, who was familiar with the security badges issued by the National Aeronautics and Space Administration ("NASA"), recognized Roe's badge as a fake. Zielinski holstered his weapon and placed Roe in handcuffs. He asked Roe where he got the badge, and Roe replied that he had the badge made. Officer Zielinski testified that during this encounter, he overheard a scanner from inside Roe's vehicle; the scanner was tuned to the Park Police frequency, as Zielinski recognized his dispatcher's voice speaking on it. Officer Zielinski subsequently retrieved, inter alia, a Maryland handgun permit and Maryland private detective and security guard certifications from Roe's wallet.

Thomas Evans, acting chief of security for NASA's Goddard Space Flight Center, testified that the private company Sec Tek provided a contract security force for the Goddard Campus in Greenbelt, Maryland. While NASA has no police department of its own, it relies on Sec Tek to provide two types of security officers: a "basic security officer," who may be armed, and a "security police officer," who has "federal arrest authority."

Evans stated that Roe worked for Sec Tek as a "security officer at Goddard" who had "federal arrest authority" "on Goddard Space Flight Center property."[2] (J.A. 115, 118, 123.) Evans testified that patrolling roadways "off of" the Goddard campus would not be an assignment for Roe, and that making traffic stops on the Parkway was outside Roe's responsibility. He further testified that although Sec Tek security police officers have arrest authority on Goddard property "if necessary and under exigent circumstances," to his knowledge they had never used such authority. (J.A. 118.)

Over Roe's objection, Sergeant James Russell, with the Maryland State Police Licensing Division, testified concerning items recovered from Roe's wallet. According to Russell, the Licensing Division regulates handgun permits as well as security guards and private detectives in Maryland. Sergeant Russell testified that private detective and security guard certifications did not provide a person with arrest authority or constitute the holder a police officer. He also testified that a handgun permit did not authorize the holder to make arrests.

At the close of the Government's evidence, Roe moved for a judgment of acquittal, contending that the Government had not satisfied its burden of proving Roe falsely held himself out to be a federal officer and identified himself as such because Roe was a federal officer and there was no evidence that he had acted as a federal police officer. The district court denied Roe's motion.

In instructing the jury on the elements of the offense, the district court initially stated as follows:

> [T]here is a single charge that you will consider in

---

[2]Roe also held a credential issued by NASA's Federal Enforcement Training Academy that allowed him to carry firearms and make warrantless arrests on NASA property, in accordance with 42 U.S.C. §§ 2456 and 2456a.

the case and that is the charge of false personation in violation of 18 United States Code, Section 912. And the indictment in this case, which again[,] is a mere accusation, charges that on or about November 9, 2007, in the District of Maryland, the defendant John Alvin Roe did knowingly and unlawfully falsely assume and presume to be an officer employee and employee [sic] acting under the authority of the United States and that he did act as such. That is, that he held himself out to be a federal police officer and identified himself as a federal police officer.

(J.A. 203.) The court continued:

Now, here are the elements of that alleged offense. To find [Roe] guilty of this crime, the [G]overnment would have to prove beyond a reasonable doubt each of the following elements. First, that [Roe] was not an officer or employee of the United States at the time in question. In this case, not a police officer.

(J.A. 203.) In a bench conference following all of the jury instructions, the Government requested that the court reissue an instruction to correct its prior use of the word "presume" rather than the word "pretend." The district court then issued the following instruction:

Now . . . what I'm about to tell you now is not to single out an instruction. It's just to correct a possible . . . in this case, alleged misspeaking. I want to read to you what the statute says that [Roe] is charged within this case . . . .

The statute reads, quote, whoever falsely assumes or pretends to be a police officer or employee acting under the authority of the United States or any department, agency or officer thereof, and acts as such is guilty of an offense.

> And that essentially is what is alleged in the indictment. First, I read to you the statute and the indictment alleges that [Roe] did knowingly and unlawfully falsely assume and pretend. If I said the word presume, that's incorrect. The word is pretend . . . .

(J.A. 209-10.)

The jury found Roe guilty. At sentencing, Roe moved for a new trial pursuant to Federal Rule of Criminal Procedure 33. The district court denied the motion. The court sentenced Roe to twelve months' probation, with the conditions that he spend four months in a community corrections facility and four months on home detention.

Roe noted a timely appeal, J.A. 233, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

Roe contends on appeal that the district court made the following errors, which require his conviction be reversed: allowing the admission of Sergeant Russell's testimony, finding the evidence sufficient to convict, and giving the jury instruction regarding impersonating a federal police officer. We address each argument in turn.

## A.

First, Roe contends the district court abused its discretion in allowing Sergeant Russell to testify about the authority possessed by the holders of a Maryland private detective and security guard certification and a handgun permit. Roe asserts that Sergeant Russell's testimony constituted "expert" testimony, and that the district court abused its discretion in admitting it even though Sergeant Russell had not been designated as an expert witness prior to trial (Fed. R. Cr. Pro.

16(a)(1)(G)), nor been qualified as one at trial (Fed. R. Evid. 702). Moreover, he maintains that the court's error was not harmless because Sergeant Russell's testimony was necessary for the jury to determine that Roe did not have lawful authority to effectuate a traffic stop on the parkway.

We review the district court's admission of testimony for abuse of discretion. *United States v. Lancaster*, 96 F.3d 734, 744 (4th Cir. 1996) (en banc). Such discretion is abused only when a "district court act[s] arbitrarily or irrationally." *United States v. Moore*, 27 F.3d 969, 974 (4th Cir. 1994) (internal quotation marks omitted). Evidentiary rulings based on erroneous legal conclusions are "by definition an abuse of discretion." *United States v. Turner*, 198 F.3d 425, 430 (4th Cir. 1999). Evidentiary rulings are also subject to harmless error analysis. *United States v. Brooks*, 111 F.3d 365, 371 (4th Cir. 1997).

A lay witness may testify "in the form of opinions or inferences" that are "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Where "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise" when certain conditions are met. Fed. R. Evid. 702. We have previously recognized that the distinction between lay and expert testimony "is a fine one" and "not easy to draw." *United States v. Perkins*, 470 F.3d 150, 155 (4th Cir. 2006) (internal quotation marks omitted). In describing this tension, we have observed:

> While we have noted that a critical distinction between Rule 701 and Rule 702 testimony is that an expert witness must possess some specialized knowl-

> edge or skill or education that is not in possession of the jurors, we also have acknowledged that the subject matter of Rule 702 testimony need not be arcane or even especially difficult to comprehend. The interpretive waters are muddier still: while lay opinion testimony *must* be based on personal knowledge, expert opinions may also be based on first hand observation and experience.

*Id.* at 155-56 (internal quotation marks and citations omitted).

Having reviewed Sergeant Russell's testimony, we conclude the district court did not err in admitting it as lay testimony. Sergeant Russell was in charge of the unit that issues handgun carry permits, as well as security guard and private detective certifications in Maryland. He was qualified to testify as to the requirements for getting such permits and certifications and to state what possessing those permits permitted an individual to do based on his personal knowledge acquired in that capacity. *See MCI Telecommunications Corp. v. Wanzer*, 897 F.2d 703, 706 (4th Cir. 1990) (holding a bookkeeper's "testifying on the basis of records kept by her personally under her control, and her projection of profits under the lease as prepared by her was predicated on the personal knowledge and perception" and as such constituted lay testimony whose identification as an expert witness was not required). Such knowledge was not "specialized knowledge" in the Rule 702 sense, and does not constitute expert testimony. Instead, it falls under Rule 701's description of lay testimony, being "rationally based on the perception of the witness" and helpful to the jury's "determination of a fact in issue." Accordingly, Roe's challenge to the admission of this testimony lacks merit.

## B.

Roe also contends the district court erred in finding the evidence sufficient to convict him of impersonating a federal

officer. We review challenges to the sufficiency of the evidence de novo. *United States v. Kelly*, 510 F.3d 433, 440 (4th Cir. 2007). "In doing so, our role is limited to considering whether there is substantial evidence, taking the view most favorable to the Government, to support the conviction." *Id.* (internal quotation marks omitted). "[S]ubstantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc). If there is substantial evidence to support the guilty verdict, then we must sustain the verdict. We do not reweigh the evidence or the credibility of witnesses, but assume that the jury resolved all contradictions in the testimony in favor of the Government. *Kelly*, 510 F.3d at 440; *see also United States v. Moye*, 454 F.3d 390, 394 (4th Cir. 2006) (en banc).

18 U.S.C. § 912 states, in relevant part: "Whoever falsely assumes or pretends to be an officer or employee acting under the authority of the United States or any department, agency or officer thereof, and acts as such . . . shall be fined . . . or imprisoned not more than three years, or both." In *United States v. Parker*, 699 F.2d 177 (4th Cir. 1983), we stated that "[t]wo distinct elements comprise the crime with which [the defendant] is charged: 1) [the defendant] must have falsely assumed or pretended to have been a federal agent, and 2) he must have acted as such." *Id.* at 178. Roe challenges the sufficiency of the Government's evidence as to each element.

Regarding the first element, Roe contends that he "could not have *pretended* to be a federal officer" because the record showed that he *was* a federal officer, employed as a "security police officer" with arrest authority on NASA property. (Appellant's Br. 23-24, 27.) However, Roe incorrectly reads § 912 to mean that an individual cannot, as a matter of law, be convicted of impersonating a particular kind of federal officer or employee if the individual is *any* kind of federal

officer or employee. The district court aptly observed the problem with Roe's argument:

> [T]hat's a bit of a fine spun distinction. The question is, he could be a federal officer and be someone who inspects poultry . . . but the issue here, was he a federal police officer; that's what the case is about. Not whether he was a federal officer in some respect, and maybe even he was somewhat close to a police officer, but the mere fact of being a federal officer would not be the answer, it's being a particular kind of federal officer.

(J.A. 155.) The prohibition in § 912 is on impersonating the officer or employee that the person is not, regardless of what the person's actual position may be.

The Ninth Circuit Court of Appeals also recognized this point in *Russell v. United States*, 271 F. 684 (9th Cir. 1921) (applying a predecessor statute to § 912). There, a timber inspector employed by the United States Navy Department was charged with impersonating a United States revenue officer. *Id.* at 684-85. The defendant maintained that "inasmuch as [he] was in fact an officer employed by the [Navy], he could not be held guilty of the offense of assuming or pretending to be an officer and employ[ee] acting under the authority of the United States." *Id.* at 685. The Ninth Circuit rejected that argument, holding "[i]t is no defense to him that he was employed in some other department of the government. There can be no question but that an employ[ee] of one department of the government may be held guilty of falsely impersonating an officer of another department." *Id.*

Similarly, here, there was ample evidence in the record for the jury to conclude that Roe was not a federal officer, and specifically not the type of federal officer he purported to be when the events with Corporal Allen unfolded. Roe's employer was a civilian company, Sec Tek, and through that

entity, Roe was a contract security guard at the NASA Goddard facility. Roe's assignment as a security officer extended only to NASA's Goddard property, and not to the Parkway where the incidents in question unfolded or to any other federal property. Similarly, the federal arrest authority Roe possessed as part of his employment was limited to emergencies occurring on the Goddard property. Yet Officer Zielinski testified that Roe told him, "I'm the police, I'm the police" and that he was "a federal police officer." On this record, sufficient evidence supports the jury's conclusion that Roe claimed to be a federal police officer when in fact he was not.

Roe also asserts the Government failed to prove the second element of the offense, that he "acted as" a federal officer. Roe's initial argument is two-fold: first, he claims that the jury was only permitted to consider the evidence of Roe's interaction with Officer Zielinski in determining his guilt; second, he contends that the interaction with Zielinski was insufficient to satisfy this element of the offense. In the alternative, Roe asserts that even taking into consideration his actions toward Corporal Allen, nothing he did "asserted any *federal* authority." (Appellant's Br. 28.)

Roe contends the district court instructed the jury to limit their consideration of his conduct to his interactions with Officer Zielinski, and that the jury could not consider any of his conduct with Corporal Allen when determining whether he acted as a federal police officer. The limiting instructions Roe relies on were given during Corporal Allen and Officer Zielinski's testimony, and limited the jury's consideration of their respective conversations with the Park Police dispatcher. The court instructed the jury that "what the dispatcher says is not offered for the truth of the matter, it just explains to you how they got where they got." (J.A. 43.) The court did not otherwise limit the testimony of either Corporal Allen or Officer Zielinski in describing the events of November 9, 2007. The limiting instructions were not broad prohibitions as to

considering Roe's conduct toward Corporal Allen as evidence of Roe's guilt, that is, in acting as a federal officer.

This understanding is consistent with other portions of the trial record, which show that the Government prosecuted the case — and Roe defended it — based on Roe's entire course of conduct with both Corporal Allen and Officer Zielinski. For example, Roe's motion for judgment of acquittal challenged the sufficiency of the evidence as to either encounter (with Corporal Allen or Officer Zielinski) to support a guilty verdict. Similarly, under the Government's theory of the case encapsulated in its closing argument, Roe was "trying to make a traffic stop" on the Parkway, and falsely asserted to be a federal police officer in order to justify his actions to Officer Zielinski. As support for this theory, the Government's closing argument frequently referred to Roe "acting as a police officer" as it described Roe activating his vehicle's lights and siren toward, and speaking on the loudspeaker to, Corporal Allen while the men were driving on the Parkway. Defense counsel's closing argument also recounted the entirety of the events that day, breaking down and attempting to discredit Corporal Allen's testimony regarding Roe's conduct, and pointing to the fact that Roe never effectuated a pull-over in order to cast doubt on the Government's interpretation of Roe's actions. At no point during arguments regarding the motion for a judgment of acquittal or closing argument did Roe contend that evidence of his interaction with Corporal Allen could not be used to determine his guilt. The record simply does not support Roe's contention that the district court limited the jury's consideration of the evidence to Roe's interaction with Officer Zielinski.

Examining the entire record, we conclude sufficient evidence supports the jury's conclusion that Roe "acted as" a federal police officer. In *Parker*, we held that the element of "act[ing] as such" requires more than a mere representation of being a federal officer or employee. 699 F.2d at 179. In *Parker*, the defendant satisfied this element by asserting false

authority over another individual when he claimed that "he was investigating a report that [the third party] was not paying taxes on the sale of firewood." *Id.* at 179. There, we cited with approval a Fifth Circuit case where "the defendant falsely pretended to be a federal officer and acted as such by signing the register at a federal penitentiary as the associate attorney general and representing to an inmate that he was the associate attorney general." *Id.* at 180 (citing *United States v. Cohen*, 631 F.2d 1223 (5th Cir. 1980)); *see also United States v. Martindale*, 790 F.2d 1129, 1135 (4th Cir. 1986) (upholding § 912 conviction where defendant falsely claimed to be a U.S. State Department employee, presented a fraudulent diplomatic passport, and requested rental car discount from a Hertz Rent-A-Car agent). We noted that "[a]lthough the defendant solicited nothing from prison personnel or inmates, his representations . . . constitute[d] acts asserting his pretended authority." 699 F.2d at 180. And in our discussion of the element in *Parker*, we observed "the government need only show that Parker asserted his pretended authority over Brooks in some fashion . . . . By demonstrating that Parker asserted the authority to investigate [the third party's] tax status, the government has met its burden." *Id.*

Here, sufficient evidence supports the jury's conclusion that Roe "acted as" a federal police officer in a single chain of unbroken events that began with Corporal Allen and ended with Officer Zielinski. Roe engaged in actions that sought to assert the authority of a federal police officer and which "backed up" his statement to Officer Zielinski that he was a federal police officer. Corporal Allen's uncontested testimony was that while he and Roe were driving on the Parkway, Roe asserted police authority that he did not possess by instructing Allen to slow down, activating his siren, and maneuvering directly behind Allen while activating his vehicle's red and blue emergency lights. As a result of this conduct, the jury could reasonably infer that Roe was initiating a police stop, as Corporal Allen also testified he believed was the case. Both Corporal Allen and Officer Zielinski testified without contra-

diction that Corporal Allen was pulling over just past an exit ramp, as Officer Zielinski's marked Park Police vehicle came into view. The jury could also reasonably infer that the reason Roe did not effectuate the stop and proceeded onto the exit ramp was that he knew Officer Zielinski was rapidly approaching him because Roe was monitoring the Park Police frequency on the scanner in his vehicle and saw Zielinski's marked Park Police vehicle.

Officer Zielinski then proceeded to pull Roe over, at which point Roe exited his vehicle, repeatedly asserted he was "a police officer" — and specifically that he was a "federal police officer." Rather than obeying Zielinski's instructions to stop, Roe advanced on Zielinski — who at that point had drawn his service weapon — and reiterated that he was a federal police officer. When Roe finally did stop, he voluntarily showed Officer Zielinski a "NASA police" badge the he had designed and had made in order to prove his assertion. These actions demonstrate that Roe's conduct exceeded a mere claim of being a federal officer. By asserting the authority of the officer he claimed to be to Officer Zielinski in his actions moments earlier with Corporal Allen, Roe satisfied the statutory requirement of "act[ing] as such", as discussed in *Parker*.

Roe also seems to claim that he could not, as a matter of law, be guilty of violating § 912 since — at most — his actions satisfying each element of the offense were directed at different individuals. Nothing in § 912 requires such a narrow reading of the prohibited conduct. Furthermore, as noted earlier, a continuous chain of events links Roe's conduct toward Corporal Allen and Officer Zielinski. There was no break in time or action between Roe's behavior toward Corporal Allen and his statements and actions toward Officer Zielinski. Accordingly, Roe's conduct formed a single, complete violation of both elements of § 912. For all of these reasons, substantial evidence supports Roe's conviction, and the district court did not err in so finding.

## C.

Lastly, Roe asserts the district court erred in instructing the jury that 18 U.S.C. § 912 proscribed the act of pretending to be "a *police* officer or employee acting under the authority of the United States." Roe contends the addition of the word "police" in the oral instruction effectively charged the jury with elements of a crime that does not exist, and constructively amended the indictment. And he maintains that the misreading of § 912 fundamentally changed the purported violation so that the jury could convict him of pretending to be a "federal police officer" even though there was evidence that could have led them to conclude he was not guilty of the actual offense, namely, pretending to a "federal officer."

A constructive amendment to an indictment occurs when "the indictment is altered to change the elements of the offense charged, such that the defendant is actually convicted of a crime other than that charged in the indictment." *United States v. Malloy*, 568 F.3d 166, 177-78 (4th Cir. 2009) (quoting *United States v. Randall*, 171 F.3d 195, 203 (4th Cir. 1999)). A constructive amendment, also known as a "fatal variance," happens when "the government, through its presentation of evidence or its argument, or the district court, through its instructions to the jury, or both, broadens the bases for conviction beyond those charged in the indictment." *Id.* at 178 (citing *United States v. Redd*, 161 F.3d 793, 795 (4th Cir. 1998)). Constructive amendment of an indictment is error per se and is an independent ground for reversal on appeal even when not preserved by objection. *United States v. Floresca*, 38 F.3d 706, 714 (4th Cir. 1994) (en banc).

When considering a constructive amendment claim, "it is the *broadening* [of the bases for a defendant's conviction] that is important—nothing more." *Id.* at 711 (emphasis added). The key inquiry is whether the defendant has been tried on charges other than those made in the indictment against him. *Id.*

Here, although the district court mistakenly inserted the word "police" into its recitation of the language of the statutory offense, the mistake was not a constructive amendment of the indictment. Rather than broadening the basis for Roe's conviction, the instruction identified the particular type of officer Roe was accused of falsely assuming or pretending to be. If anything, the instruction narrowed, rather than broadened, the basis for convicting Roe. The instruction was consistent with the offense charged in the indictment, violation of § 912 and, as the indictment specifically noted — Roe holding himself out to be a federal police officer. Because the instruction did not allow Roe to be convicted of a crime not included in the indictment, the district court did not erroneously amend the indictment in violation of Roe's Fifth Amendment rights.[3]

## III.

For the aforementioned reasons, we affirm the judgment of the district court.

*AFFIRMED*

GREGORY, Circuit Judge, dissenting:

The majority makes a fundamental mistake today in interpreting 18 U.S.C. § 912: holding that it may be properly applied to an individual who is in fact a federal officer, though he may have acted outside his authority. The language makes clear that the statute is only meant to apply to those who are not federal officers, yet pretend to be. At base, the statute is not meant to regulate the exercise of authority by

---

[3]In addition to contending that the district court erred in giving the instruction, Roe also asserts the district court erred in denying his motion for a new trial, which was based on the same alleged error in the jury instruction. For the reasons discussed above, Roe's argument as to the denial of his motion for a new trial also fails.

federal officers; it is a criminal statute meant to deter and punish impersonators of federal officers. For this reason, I dissent from the majority's opinion and would reverse Roe's conviction.[1]

## I.

18 U.S.C. § 912 provides:

> Whoever *falsely assumes* or *pretends to be an officer* or employee acting under the authority of the United States or any department, agency or officer thereof, *and acts as such*, or in such pretended character demands or obtains any money, paper, document, or thing of value, shall be fined under this title or imprisoned not more than three years, or both.

18 U.S.C. § 912 (2006) (emphasis added). Thus, we have held that in order to prove a violation of Section 912 under the "acts as such" prong, the government must show the defendant (1) falsely assumed or pretended to be a federal official and (2) acted as such. *United States v. Guthrie*, 387 F.2d 569, 570 (4th Cir. 1967). To "act as such," the defendant must have asserted his pretend authority in some way. *United States v. Parker*, 699 F.2d 177, 179 (4th Cir. 1983) (holding that the mere statement that one is a federal officer, without more, is insufficient to show that the defendant "acted as such").[2]

---

[1] I concur as to the majority's conclusions in parts II.A and II.C of its opinion concerning Sergeant Russell's testimony and the jury instruction about the elements of the crime.

[2] In *Parker*, we expressly distinguished our interpretation of the statute from the D.C. Circuit's, which requires that the impersonator perform an overt act asserting the authority he claims to have. *See United States v. Rosser*, 528 F.2d 652, 656 (D.C. Cir. 1976). By contrast, this Circuit also does not require that the impersonation have an effect on a third party. *Compare United States v. Gilbert*, 143 F.3d 397, 398 (8th Cir. 1998) ("To 'act as such' would be the equivalent of causing the deceived person to follow some course he would not have pursued but for the deceitful conduct.") (internal quotation marks and citation omitted). Rather, we require only that the impersonator falsely pretend or assume the office of a federal officer and attempt to assert that authority in some way.

The majority holds that the evidence at trial was sufficient to convict Roe under Section 912. It concludes that the jury could have reasonably found that Roe was not a federal officer, and, even if he was, the fact that he actually was a federal officer did not give him license to act as though he had authority beyond what he actually possessed. Yet, the majority's interpretation of the statute, relying principally on an eighty-nine year old case from the Ninth Circuit concerning a prior version of Section 912, is not convincing because Roe was the kind of officer he was charged with pretending to be. Therefore, even though Roe did not in fact possess federal authority to take the actions he did on the parkway at the time of the incident, he could not have pretended to be a federal police officer because he was one.

A.

First and foremost, I disagree with the majority that the jury could have reasonably found that Roe was not a federal officer. It is true that Roe was an employee of Sec Tek, a private corporation. However, testimony by Thomas Evans, the head of security at NASA's Goddard Space Flight Center, established, without contradiction, that Roe was a security police officer there, meaning he was deputized by the federal government to act as a federal police officer — making arrests and carrying a weapon — on Goddard property. Even though Roe's paycheck came from Sec Tek, that does nothing to diminish the fact that he was imbued with authority by the federal government and was thus an "employee acting under the authority of the United States." § 912.

B.

Given that Roe was indeed a federal officer for purposes of Section 912, the question is then whether he may be convicted of "pretending" or "assuming" to be a federal officer. Interpreting the wording of the statute, the answer must most certainly be no.

Section 912 prohibits individuals from "pretending" or "assuming" to be a federal officer. In interpreting the meaning of a statute, we give its words their ordinary meaning. *Md. State Dept. of Educ. v. Dept. of Veterans Affairs*, 98 F.3d 165, 169 (4th Cir. 1996) (citing *United States v. Goldberger & Dubin, P.C.*, 935 F.2d 501, 506 (2d Cir. 1991)). To pretend, in the manner in which it is used in the statute, ordinarily means "to make believe" or "to hold out, represent, or assert falsely." *Webster's Third New International Dictionary* 1796 (1981). To assume, in turn, means "to take in appearance only" or "pretend to have or to be." *Id.* at 133. Thus, by its wording, the first clause of the statute criminalizes falsely asserting that one is a federal officer when one in fact is not.

Notably, the statute does not say anything about asserting *powers* or *authority* that one does not have. The actus reus under the statute is instead concerned with pretending to be an *officer* as such, and then acting in a way that an officer would. The statute, therefore, is concerned with deterring and punishing those who pretend to be federal officers in order to prevent them from obtaining any benefit accorded to their pretended status. There is no indication, however, that the statute is interested in policing those individuals who are federal officers, but who act outside of their authority. No provision in the statute criminalizes conduct by those who are federal officers but pretend to have other authority which they do not possess. At base, the statute is a criminal sanction, not a personnel regulation for federal officers who act extradjudicially.

As an illustration of the statute's reach, consider the following example. A male FBI agent is executing a search warrant on a home and arrests its female occupant for possession of narcotics. His personnel regulations specifically state that he does not have the authority to strip search an arrestee of the opposite sex. Yet, this agent, defying the boundaries of his lawful authority, orders the woman to undress and submits her to a cavity search. Would we hold that because he acted with-

out authority, he was "pretending" to be a federal officer and may be punished under the statute? Certainly not, though he would likely be liable for aggravated battery and other offenses.

The key to the foregoing example and the case at hand is that Section 912 is not concerned with those who in fact *are* federal agents but who act without authority, but instead those who *are not* and pretend to have federal authority. As in the example, there are many other statutes which govern the unlawful exercise of authority by federal officials, just not Section 912. Thus, while it is certain that Roe did not have authority to make traffic stops on the Baltimore-Washington Parkway, he cannot be guilty under the statute for exercising police power when he did in fact have limited, federal police powers.

The majority points to *United States v. Russell*, 271 F. 684 (9th Cir. 1921), to support its conclusion that an individual who is a federal official can be convicted under Section 912. In *Russell*, the defendant was a timber inspector, employed by the United States Department of the Navy. Russell went to an apartment, told the occupant, "We are from the federal government," searched the apartment for alcohol, and took $80 from the occupant as a bribe. *Id.* at 684-85. The Ninth Circuit, affirming the denial of the defendant's motion for acquittal, held that "[t]here can be no question but that an employe [sic] of one department of the government may be held guilty of falsely impersonating an officer of another department." *Id.* at 685. Yet, in that case, the defendant was a timber inspector and he feigned being an agent of the Bureau of Prohibition.[3] He therefore pretended to be a particular federal officer that he was not, and assumed powers he clearly did not have.

---

[3]The Bureau of Prohibition was the agency tasked with enforcing prohibition in the United Sates. *See* Lawrence Schmeckebier, *The Bureau of Prohibition, its History, Activities and Organization* (1929).

By contrast, Roe was not pretending to be a federal police officer; he was one. The instrumentalities he used to signal Corporal Allen to stop — his spotlight, siren, blue lights, and loud speaker — were all equipment used in his legitimate job as a federal police officer. There is no argument that Roe actually possessed the authority to stop Corporal Allen for speeding on the parkway, yet his actions were not outside of the type of actions that he would normally undertake on the Goddard campus working as a security officer deputized with the power to make arrests and carry a weapon. Compared to *Russell*, here the defendant was taking action which, although beyond his jurisdiction, was of the nature of his position and authority. In essence, he was behaving in the same way as he would if he was within his jurisdiction.

Likewise, Roe's interaction with Officer Zielinski where he yelled "I'm the police!" and identified himself as a federal police officer did not represent him to be something that he was not. In all likelihood, at the time of the encounter, Roe was attempting not to get shot by identifying himself as one of the "good guys." No matter his reason for doing so, however, Roe made no false statement to Officer Zielinski.

Therefore, because Roe was a federal police officer, he cannot be convicted under Section 912 of pretending to be the same.

## II.

In a case where the individual is the type of federal agent he represents himself to be, he cannot be liable under Section 912. Otherwise, we would have to interpret the statute to read, absurdly, that an individual can be convicted of pretending to be something he actually is. The statutory language makes clear that Congress did not intend this result. I therefore respectfully dissent.