**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 23-4689**

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

BERNARD KENTRELL BREELAND, JR., a/k/a Neezy Main,

Defendant - Appellant.

_____

Appeal from the United States District Court for the District of South Carolina, at Columbia.  Joseph F. Anderson, Jr., Senior District Judge.  (3:22-cr-00220-JFA-1)

_____

Argued:  March 18, 2025                                          Decided:  August 14, 2025

_____

Before NIEMEYER and RICHARDSON, Circuit Judges and FLOYD, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**ARGUED:**  John LaFitte Warren, III, LAW OFFICE OF BILL NETTLES, Columbia, South Carolina, for Appellant.  Andrea Gwen Hoffman, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, South Carolina, for Appellee.  **ON BRIEF:**  Adair F. Boroughs, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A jury convicted Bernard Kentrell Breeland, Jr., of possessing ammunition after having been convicted of a felony, 18 U.S.C. § 922(g)(1), following a shooting that occurred in 2020.  The district court sentenced Breeland to 120 months' imprisonment.  Breeland now appeals, arguing the district court made evidentiary errors which entitle him to a new trial and that the sentence it imposed was procedurally unreasonable.  Because we conclude the district court did not abuse its discretion, we affirm its judgment.

I.

A federal grand jury returned an indictment alleging Breeland knowingly possessed .45 caliber ammunition after having been convicted of a felony in March 2022.  *See* 18 U.S.C. § 922(g)(1).  The indictment was based upon an incident that occurred in February 2020.  Breeland was accused of being the individual seen on surveillance camera shooting Iman Wilson multiple times with a pistol in a parking lot in Columbia, South Carolina in February 2020.  On the surveillance video, the shooter approached Wilson and apparently shot him at least once while they were both standing.  At that point, Wilson fell to the ground.  The shooter continued to fire at Wilson from close range, and several muzzle flashes are visible.  Wilson survived the shooting with injuries, but he later died in an unrelated incident.

In August 2022, Breeland filed a motion to dismiss the indictment, arguing § 922(g)(1) was unlawful after the Supreme Court rendered its decision in *New York State*

2

*Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022).  The district court denied the motion, and the case proceeded to trial.

A.

Breeland challenges several evidentiary rulings made before and during his trial, so we begin with a summary of relevant proceedings in the district court.  Breeland moved before trial to exclude lay identification testimony by Columbia Police Department (CPD) Investigators Nicholas Fortner and Ryan McIntyre.  Each testified that they recognized Breeland as the individual shooting Wilson in the surveillance video.  He argued the testimony was improper lay identification testimony because: (1) McIntyre's identification was based on prior contacts with Breeland in his police work; and (2) Fortner's identification was based on the surveillance video of the shooting and photographs of Breeland in an interview room at CPD.

After hearing the proffered testimony outside the presence of the jury, the district court admitted the testimony with respect to both investigators.  However, it also instructed McIntyre not to identify himself as a law enforcement officer or reference his work on a gang task force upon Breeland's request.

The gun used in Wilson's shooting was not recovered, and Breeland's pretrial brief forecasted his intent to introduce evidence of an alternative perpetrator.  Breeland based this alternative perpetrator theory on several documents produced by the Lexington County Sheriff's Department (LCSD).  Those documents were: two LCSD booking reports of individuals arrested in another case, an associated report for a handgun seized in connection

3

with those arrests, a South Carolina Integrated Ballistics Identification System (IBIS) report on that handgun, and a National Integrated Ballistic Information (NIBIN) report. The NIBIN report flagged that the firearm seized in this later arrest and the weapon used in the Wilson shooting several months earlier were potentially related, but emphasized that no microscopic comparison between ammunition and the gun had been performed.

B.

The jury was empaneled shortly after the pretrial hearing and trial commenced. McIntyre and Fortner each testified about their respective identifications of Breeland during the government's case-in-chief.  Portions of McIntyre's testimony concerned his previous interactions with Breeland but were sanitized of references to police work.  On redirect examination, the government asked him if he "record[ed] the conversations" with Breeland or if he was "familiar with any nicknames" that Breeland had.  J.A. 296.  Breeland then moved for a mistrial and argued this testimony had violated the court's instruction to not imply McIntyre's role as a law enforcement officer.  The district court denied the motion, concluding that merely asking whether a conversation was recorded or about a defendant's nickname did not suggest a law enforcement affiliation.

Fortner, whose law enforcement position was disclosed to the jury, also testified. Based on his personal identification of Breeland at CPD, videos from the shooting, and an image of Breeland in an interview room at CPD, he identified Breeland as the shooter in the surveillance video.

4

Breeland sought to cross examine Kevin Schmidt, a CPD crime scene investigator who responded to the Wilson shooting, about the NIBIN report. Schmidt acknowledged familiarity with NIBIN, stating it was "the database where they basically test fire firearms, take the shell casings, and store it in a database, basically like fingerprints but for shell casings." J.A. 227–28. Breeland's counsel then presented the NIBIN report to Schmidt, who stated he had not seen the report before, but he did recognize the CPD case number for the Wilson shooting. The court sustained the government's objection to questions about the substance of the report on authenticity grounds, stating it would "feel much more comfortable" admitting the records the next day of trial when a records custodian would be present for authentication. J.A. 232.

Breeland also filed an offer of proof arguing the documents supporting his third-party perpetrator theory were admissible. Specifically, Breeland argued that the documents — which were, recall, reports relating to the recovery of a similar or the same firearm used to shoot Wilson and the booking reports of the individuals from whom that firearm was recovered — were self-authenticating under Federal Rule of Evidence 902(5) ("A book, pamphlet, or other publication purporting to be issued by a public authority.). Breeland also raised Rule 902(1) as grounds for admission, which provides that documents bearing the seal of a government entity and "a signature purporting to be an execution or attestation" are self-authenticating. The district court rejected Breeland's Rule 902(5) argument on the basis that the documents at issue were not the sort of "book, pamphlet, or other publication" for public consumption contemplated by the rule. Shortly before the government rested, the court also rejected Breeland's Rule 902(1) argument because the

5

supposed "seal" on the relevant documents was "just a normal letterhead," and it concluded the rule was intended to apply to a stamp or otherwise "distinctive logo of sorts." J.A. 335–37.

The government concluded its case-in-chief shortly thereafter. Before Breeland presented evidence, the government moved to exclude the documents Breeland sought to introduce for his third-party perpetrator defense. The thrust of the government's argument here was that the documents may confuse the jury and that Breeland was attempting to improperly introduce expert evidence through the NIBIN report. The court recessed without ruling on this issue. But before it ruled, Breeland withdrew the evidence. Breeland thereafter did not put on a defense. Jury instructions were read, followed by the parties' respective closing arguments. The jury returned a guilty verdict later that day.

### C.

Breeland moved for a judgment of acquittal or, in the alternative, for a new trial. *See* Fed. R. Crim. P. 29, 33. Relevant to this appeal, he argued that the fact that the LCSD and NIBIN documents were not admitted during the government's case prejudiced him to the extent a new trial was warranted. The district court denied that motion in a written order, noting the soundness of its evidentiary rulings, its conclusion that Breeland mooted the evidentiary issue by withdrawing the exhibits, and that, in the larger context of Breeland's case, any error was harmless.

The government prepared a presentence report (PSR) prior to Breeland's sentencing. It recommended the application of a cross reference under U.S.S.G. §

6

2A2.1(a)(2. The government stated that this cross reference should apply — resulting in a two-level offense increase — because Breeland's conduct amounted to attempted murder. Breeland objected to the cross reference and argued that the government could not prove that he possessed specific intent to kill Wilson.

The district court adopted the PSR without modification. The court calculated a final offense level of 29 and a guideline range of 108 to 120 months. The court imposed a sentence of 120 months' imprisonment followed by supervised release of at least one year.

Breeland timely appeals, arguing that evidentiary errors warrant a new trial and that the district court imposed a substantively unreasonable sentence. He also challenges the constitutionality of the statute proscribing the possession of ammunition by a person who has been convicted of a felony under the Second Amendment.

II.

Breeland begins by arguing the statute upon which he was convicted, 18 U.S.C. § 922(g)(1), is facially unconstitutional under *Bruen*. However, a panel of this Court has held that Section 922(g)(1) remains facially constitutional post-*Bruen*. *United States v. Canada*, 123 F.4th 159, 161–62 (4th Cir. 2024). And we are bound by that decision. *See United States v. Hunt*, 123 F.4th 697, 702 (4th Cir. 2024) ("one panel cannot overrule another") (quoting *McMellon v. United States*, 387 F.3d 329, 333 (4th Cir. 2004) (en banc)). Breeland's facial challenge to Section 922(g) therefore fails.

7

III.

We will take up Breeland's arguments relating to evidentiary issues and related matters next. He contends first that the district court abused its discretion by permitting Investigators Fortner and McIntyre to offer testimony identifying him in the surveillance video, that the court should have ordered a mistrial based upon certain testimony from McIntyre, and that the court improperly instructed the jury on the identification issue. He next argues that the court's rulings with respect to the LCSD and NIBIN documents were abuses of discretion affecting his Sixth Amendment confrontation right. We affirm the district court's judgment.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *See United States v. Roe*, 606 F.3d 180, 185 (4th Cir. 2010). A court abuses that discretion only when it acts "arbitrarily or irrationally." *Id.* (quoting *United States v. Moore*, 27 F.3d 969, 974 (4th Cir. 1994)). "Evidentiary rulings based on erroneous legal conclusions are 'by definition an abuse of discretion.'" *Id.* (quoting *United States v. Turner*, 198 F.3d 425, 430 (4th Cir. 1999)).

A.

Breeland's arguments about Fortner's and McIntyre's testimony pertain to the admission of lay witness testimony. A lay witness may testify "in the form of an opinion" that is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific,

8

technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

"[I]f a witness's firsthand observations are 'common enough' and require applying only a 'limited amount of expertise,' they may fairly come in under Rule 701 as lay testimony." *United States v. Smith*, 962 F.3d 755, 767 (4th Cir. 2020) (quoting *United States v. Perkins*, 470 F.3d 150, 156 (4th Cir. 2006)). "On the other hand, opinions resulting 'from a process of reasoning which can be mastered only by specialists in the field' must be admitted through Rule 702." *Id.* (quoting *United States v. Howell*, 472 F. App'x 245, 246 (4th Cir. 2012)).

Our review of the McIntyre and Fortner testimony makes clear that the admission of this testimony was sound. True, as Breeland points out, neither investigator was present at the site of the shooting to witness it. But their testimony concerned their lay opinions as to Breeland being the individual seen in the video based upon their prior interactions with him. That is the kind of testimony that is "rationally based on the witness's perception," and is "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701; *cf. United States v. Johnson*, 617 F.3d 286, 293 (4th Cir. 2010) (finding abuse of discretion because officer testified about his "credentials and training, *not his observations*" of wiretapped phone calls) (emphasis in original)). On this record, the admission of Fortner and McIntyre's testimony was not an abuse of discretion.[1]

---

[1] Breeland also states in a single paragraph that the evidence should have been excluded under Federal Rule of Evidence 403, but a party waives an argument if it fails to develop
(Continued)

9

Nor did the district court err in denying Breeland's request for a mistrial during McIntyre's testimony. The district court instructed the government and McIntyre, an Investigator affiliated with a CPD gang task force, to not reference his law enforcement work during his testimony so as to limit prejudice to Breeland on that basis. And Breeland does not argue that McIntyre was explicitly identified as a law enforcement officer at any time. However, he focuses on the government's questions about whether McIntyre recorded any conversations with Breeland or was familiar with any of Breeland's nicknames. Breeland in turn argues that this questioning "suggested that [McIntyre] sometimes engages in the type of actions law enforcement officers perform . . . and had the type of specialized information that law enforcement officers have." Opening Br. 52.

The district court did not abuse its discretion in denying Breeland's request to declare a mistrial. We disturb the district court's denial of a motion for a mistrial only "under the most extraordinary of circumstances," and Breeland does not come close to demonstrating that prerequisite. *United States v. Dorlouis*, 107 F.3d 248, 257 (4th Cir. 1997). The supposedly prejudicial testimony, both standing alone and in the context of the government's questioning, do not suggest that McIntyre was affiliated with law enforcement. The complained-of testimony also clearly does not suggest any affiliation with the gang task force. We therefore conclude the government complied with the court's

---

it and takes only a "passing shot" at the issue. *United States v. Cabrera-Rivas*, 142 F.4th 199, 219 (4th Cir. 2025).

instructions regarding McIntyre's testimony, and the denial of Breeland's motion for a mistrial was not an abuse of discretion.

Lastly, Breeland challenges jury instructions related to the identification testimony. The court — over Breeland's objection, but with some modifications he had requested — instructed jurors on eyewitness testimony. For example, the court instructed that "if [the juror] believe[s] that the witness was truthful, [the juror] must still decide how accurate that identification was." J.A. 381–82. Jurors were also instructed to consider the "circumstances surrounding the later identification," the length of time the witness had to observe the person, and whether the witness had observed the person previously. *Id.*

"We review the decision to give or not give a jury instruction, and the content of an instruction, for abuse of discretion." *Burgess v. Goldstein*, 997 F.3d 541, 557 (4th Cir. 2021). "When jury instructions are challenged on appeal, the key is 'whether, taken as a whole, the instruction fairly states the controlling law.'" *Id.* (quoting *United States v. Cobb*, 905 F.2d 784, 789 (4th Cir. 2021)).

Breeland concedes that these instructions constitute "an accurate recitation of how eyewitness testimony should be evaluated, but he nonetheless argues the instructions were "inappropriate in light of the testimony at trial" because the identification was beyond the scope of the evidence. Opening Br. 55. We agree that the instructions "fairly state[d] the controlling law." *Burgess*, 997 F.3d at 557 (quoting *Cobb*, 905 F.2d at 789). Further, we disagree with Breeland's contention that the instruction was germane only to matters "without the scope of the evidence." Opening Br. 55 (quoting *United States v. Linn*, 438 F.2d 456, 460 (10th Cir. 1971)). A key issue in this case was the identity of the individual

11

seen on surveillance camera footage shooting Wilson and fleeing the scene. In seeking to prove beyond a reasonable doubt that individual was Breeland, the government introduced evidence from witnesses that had previously interacted with Breeland regarding their lay opinion that it was in fact Breeland in the video. The instructions were both legally correct and factually relevant to matters for the jury to decide. Therefore, Breeland's challenge to the jury instructions fails because the district court did not abuse its discretion.

B.

Next, we address Breeland's arguments respecting the district court's exclusion of the NIBIN report and related LCSD documents during the government's presentation of evidence. Breeland attempted to introduce these documents during the government's case-in-chief to present an alternative perpetrator theory. Specifically, Breeland sought to introduce the evidence while cross-examining CPD crime scene investigator Schmidt, with the ultimate purpose of arguing "that the government's investigation was incomplete and that law enforcement ignored readily available investigative leads about the Handgun and alternative perpetrators." Opening Br. 44.

The district court considered extensive argument about these documents but eventually concluded that they were not authenticated under Federal Rule of Evidence 901 (requiring a proponent to "produce evidence sufficient to support a finding that the item is what the proponent claims it is") nor self-authenticating under Rule 902(5) as an official publication. It also rejected that letterhead bearing the South Carolina Law Enforcement Division or LCSD logos were the kinds of official "seals" that would permit finding a

12

document was self-authenticating under Rule 902(1).  The evidence was, in the end, not admitted during the government's case.  But the district court affirmatively stated that, if a records custodian could testify to the documents' authenticity, it would find the documents authenticated and Breeland would be permitted to present them in his defense.  Breeland, in turn, indicated that he would seek to admit the documents at that time; the government objected on the basis that the evidence could confuse the jury.  The parties presented arguments on the government's objection, and the court recessed to consider the matter.

But before the court ruled, Breeland withdrew the evidence.  *See* J.A. 360–61.  The court confirmed that he was "withdrawing this evidence we've just been talking about," and Breeland's counsel responded "Correct."  J.A. 361.  Breeland did not put on any evidence in his defense.

"[W]aiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).  And "[a] party who identifies an issue, and then explicitly withdraws it, has waived the issue."  *United States v. Robinson*, 744 F.3d 293, 298 (4th Cir. 2014) (quoting *United States v. Rodriguez*, 311 F.3d 435, 437 (1st Cir. 2002)); *see also Wood v. Milyard*, 566 U.S. 463, 474 (2012) (issue waived where party acknowledged it, but "deliberately steered the District Court away from the question").  The government contends that this issue has been waived, and we agree.

True, the evidence was not admitted during the government's case, but at the same time, the court had indicated to the parties that it would permit Breeland to offer those documents in his defense, so long as an LCSD records custodian was available.  And it

13

appears from the record that an LCSD records custodian was on the way to the courthouse, or at the very least, had confirmed his availability on the second day of trial when the matter was discussed before the court. But before he arrived, Breeland "explicitly with[drew] it." *Robinson*, 744 F.3d at 298 (quoting *Rodriguez*, 311 F.3d at 437).

Breeland resists this conclusion and references the Sixth Amendment confrontation right and cross-examination's promise as "the principal means by which the believability of a witness and the truth of his testimony are tested." Opening Br. 45 (quoting *Davis v. Alaska*, 415 U.S. 308, 315–16 (1974)). But the action of the district court Breeland now challenges on appeal is not a limitation of, say, the scope of cross examination. Instead, this argument concerns the exclusion of evidence, and the Confrontation Clause does not "confer the right to cross-examine 'in whatever way, and to whatever extent, the defense might wish.'" *United States v. Ayala*, 601 F.3d 256, 273 (4th Cir. 2010) (quoting *Delaware v. Fensterer*, 47 U.S. 15, 20 (1985) (per curiam)). Breeland offered the evidence, and then affirmatively withdrew it. We therefore conclude the matter of the admission of NIBIN and LCSD documents has been waived.

IV.

Finally, we examine Breeland's arguments that the district court rendered a procedurally unreasonable sentence because it applied a cross-reference under U.S.S.G. § 2A2.1(a)(2) for attempted murder. He contends application of the cross-reference was unlawful because the court looked to the wrong evidentiary standard and that the facts did

14

not support a finding that Breeland possessed specific intent to kill Wilson. We conclude the sentence the district court rendered is procedurally reasonable.

We review sentences for procedural unreasonableness "under a deferential abuse-of-discretion standard." *United States v. Torres-Reyes*, 952 F.3d 147, 151 (4th Cir. 2020) (quoting *Gall v. United States*, 552 U.S. 38, 41 (2007)). "To determine whether a sentence is procedurally reasonable, 'this Court considers whether the district court properly calculated the defendant's advisory guidelines range, gave the parties an opportunity to argue for an appropriate sentence, considered the 18 U.S.C. § 3553(a) factors, and sufficiently explained the selected sentence.'" *Id.* (quoting *United States v. Ross*, 912 F.3d 740, 744 (4th Cir. 2019)). In this case, we are specifically tasked with "determining whether a district court properly applied the advisory Guidelines," in which case "we review the district court's legal conclusions de novo and its factual findings for clear error." *United States v. Ashford*, 718 F.3d 377, 380 (4th Cir. 2013) (quoting *United States v. Layton*, 654 F.3d 330, 334 (4th Cir. 2009)).

Section 2K2.1(c) of the U.S. Sentencing Guidelines permits the application of a cross reference to a defendant's sentence if that defendant "used or possessed any firearm or ammunition cited in the offense of conviction." That provision in turn refers to U.S.S.G. § 2X1.1, which directs the district court to calculate the relevant offense level based upon the substantive criminal offense in such circumstances. And Section 2A2.2 provides the sentencing guidelines for the underlying substantive offense the government argued in the PSR should apply: attempted murder. So, the government argued before sentencing, the court should impose a sentence using attempted murder as a cross reference because

15

Breeland's act of shooting Wilson amounted to attempted murder. "To prove attempted murder, the Government must show that the defendant both had 'culpable intent to commit the crime' and 'took a substantial step towards completion of the crime that strongly corroborate[s] that intent.'" *United States v. Ellis*, 130 F.4th 442, 449 (4th Cir. 2025) (quoting *United States v. Engle*, 676 F.3d 405, 420 (4th Cir. 2012)). The district court did not err by finding Breeland had attempted to kill Wilson by a preponderance of the evidence.[2]

At sentencing, the district court explained why it was applying the cross reference: it found that Breeland was "clearly the aggressor," that he shot Wilson "at point-blank range" in the torso, and "then after he fell down and was obviously incapacitated," "the shots continued." J.A. 616–17. The district court went onto explain that specific intent to kill — an element of attempted murder — "could be shown circumstantially" under the facts of this case. *Id.*

Breeland argues the district court erred because it focused "exclusively" on the number of shots he fired, and the record therefore did not support a finding of specific intent. Opening Br. 65. But the court, as just explained, found more than just the number of shots supported its ruling: specifically, it emphasized that Breeland appeared to be the

---

[2] Breeland also argues that this Court should instead hold the government to a clear and convincing evidentiary standard on the application of a cross-reference. We have rejected this argument previously, and Breeland does not persuade us to revisit our well-reasoned precedent. *See United States v. Grubbs*, 585 F.3d 793, 803 (4th Cir. 2009) ("Preponderance of the evidence is the appropriate standard of proof for sentencing purposes."); *see also United States v. Medley*, 34 F.4th 326, 335–36 (4th Cir. 2022) (recognizing preponderance standard as proper when making relevant sentence-enhancement findings).

16

aggressor, and that he first shot Wilson at close range and continued to do so after Wilson had fallen to the ground.

Not long ago, we affirmed the application of an attempted murder cross-reference in the case of a defendant who "pulled out a gun, cocked it back, pointed it at [the victim] and fired from close proximity." *Ellis*, 130 F.4th at 449–50 ("It is, after all, only natural to infer that when someone shoots at another person, the shooter intends to kill.") (quoting *State v. Williams*, 876 S.E.2d 324, 327 (S.C. Ct. App. 2022)).  The district court did not err by applying the attempted murder cross reference when fashioning Breeland's sentence. As this is the only sentencing argument raised by Breeland on appeal, we therefore conclude the district court rendered a procedurally reasonable sentence.

V.

We conclude that the district court did not err by declining to dismiss Breeland's indictment, did not abuse its discretion in ruling on evidentiary and other related issues at trial, and did not render a procedurally unreasonable sentence.  Accordingly, its judgment is

*AFFIRMED.*

17