LOWY, J.
**121 A District Court jury convicted the defendant, Joseph Fragata, of intimidating a witness in violation of G. L. c. 268, § 13B, in connection with an incident of alleged domestic violence.
**122 [1] The statute, as relevant here, provides:
"Whoever, directly or indirectly, willfully ... attempts or causes physical *299 injury ... [or] intimidates ... another person who is ... a witness or potential witness at any stage of a criminal investigation, ... or other criminal proceeding of any type ... with the intent to impede, obstruct, delay, harm, punish or otherwise interfere thereby, or do so with reckless disregard, with such a proceeding shall be punished ...."
G. L. c. 268, § 13B (1) (a ), (c ) (i), (v), as amended through St. 2010, c. 256, § 120.[2] The Commonwealth's theory at trial was that the defendant violated § 13B (1) (c ) (i) by taking away the alleged victim's cellular telephone to prevent her from calling 911 for help after he had verbally assaulted her. On direct appellate review, the defendant contends primarily that the evidence was insufficient to sustain his conviction of witness intimidation under § 13B (1) (c ) (i), because no view of the evidence would have allowed the jury to conclude that he had committed any crime before he took the victim's cellular telephone.
We hold that, to convict a defendant of witness intimidation under the central provision at issue here, G. L. c. 268, § 13B (1) (c ) (i), the Commonwealth must prove that (1) a possible criminal violation occurred that would trigger a criminal investigation or proceeding; (2) the victim would likely be a witness or potential witness in that investigation or proceeding; (3) the defendant engaged in intimidating behavior, as defined in the statute, toward the victim; and (4) the defendant did so with the intent to impede or interfere with the investigation or proceeding, or in reckless disregard of the impact his conduct would have in impeding or interfering with that investigation or proceeding. Applied here, we conclude that the evidence was insufficient to support the defendant's conviction on the particular theory argued by the Commonwealth at trial. There was sufficient **123 evidence to convict the defendant of witness intimidation based on his conduct after he took the victim's cellular telephone. But this alternative ground was not argued by the Commonwealth, and we have no way of knowing whether the jury based their verdict on this alternative ground, for which the evidence was sufficient to convict, or on the theory argued by the Commonwealth, for which the evidence was insufficient to convict. Accordingly, we reverse.
1. Background. We summarize the evidence in the light most favorable to the Commonwealth, reserving certain details for later discussion. Commonwealth v. Latimore, 378 Mass. 671, 676-677, 393 N.E.2d 370 (1979).
The victim and the defendant met in May, 2014, and developed a romantic relationship. On Christmas Day, 2015, the victim and the defendant hosted a small gathering in the apartment where the two were living. After their guests left, the defendant screamed at the victim and called her "nasty names." The victim began to cry and told the defendant that she was going to telephone 911. The defendant immediately took the victim's cellular telephone from her and begged her not to call the police.
*300 The victim told the defendant that she wanted to leave and that she was still going to call 911. As soon as she ran to the door to get out and call 911, the defendant stood in front of the door; grabbed the victim by the arms, causing them to bruise; and pushed the victim aside, again begging her not to call 911. Then, while the victim was sitting on a couch, the defendant approached her, grabbed her throat, and started choking her, hitting her head against the wall. After that attack, the victim sat on the couch and cried; the defendant had told her that he would not let her leave and she did not feel free to do so. Finally, after about thirty to forty-five minutes, the victim was able to grab her cellular telephone, leave the apartment, and call 911 from across the street.
The defendant was tried before a jury in the District Court on charges of intimidating a witness, strangulation or suffocation, assault and battery by means of a dangerous weapon, kidnapping, and assault on a family or household member. At the close of the Commonwealth's case, and again at the close of the evidence, the defendant moved for a required finding of not guilty on all charges, which the judge denied. In his final jury charge, the judge instructed the jury on the elements of the crime of witness intimidation as follows:
"In order to prove the [d]efendant guilty of [intimidation of a witness], the Commonwealth must prove three things beyond **124 a reasonable doubt: First, that the [d]efendant directly or indirectly attempted to cause physical injury to [the victim], cause[d] physical injury to her, or intimidated her; second, that [the victim] was a witness or potential witness in any stage of a criminal investigation or criminal proceeding of any type; and third, that the [d]efendant did so willfully with the specific intent to impede, obstruct, delay, or otherwise interfere with a criminal investigation."
The jury convicted the defendant of intimidating a witness, but acquitted him of all other charges. The judge imposed a sentence of two years in a house of correction. The defendant appealed, and we granted his application for direct appellate review.
2. Discussion. General Laws c. 268, § 13B, offers far-reaching protection to five categories of protected persons delineated therein. See Commonwealth v. Morse, 468 Mass. 360, 367, 10 N.E.3d 1109 (2014) (noting that § 13B is "[o]ne of the broader statutes in the category of 'crimes against public justice' "); Commonwealth v. Hamilton, 459 Mass. 422, 434 n.16, 945 N.E.2d 877 (2011) (acknowledging legislative intent to proscribe broad range of conduct by "expanding the types of 'proceeding' covered by the statute"). The subsection at issue here specifically prohibits, in relevant part, intimidation of "a witness or potential witness at any stage of a criminal investigation, ... or other criminal proceeding of any type." G. L. c. 268, § 13B (1) (c ) (i).
The defendant argues that § 13B (1) (c ) (i) prohibits intimidation only of witnesses who have knowledge of actual crimes that have already occurred. The defendant thus contends that his motion for a required finding of not guilty should have been allowed because there was no basis for a reasonable jury to find that he had already committed a crime when he took the victim's cellular telephone to prevent her from calling 911. See Commonwealth v. A Juvenile, 368 Mass. 580, 589, 334 N.E.2d 617 (1975) ("abusive speech is not, without more, subject to criminal sanction"). Although we reject the defendant's construction of the statute as too narrow, we agree that the evidence was insufficient to sustain his conviction under § 13B (1) (c ) (i) on the theory argued by the Commonwealth at trial.
*301 The language of § 13B (1) (c ) (i) does not require proof that an actual crime was committed before the act of intimidation, but rather, as stated, that the victim of the intimidation was "a witness or potential witness at any stage of a criminal investigation, ...
**125 or other criminal proceeding."[3] We have previously observed that a " 'criminal proceeding' within the meaning of § 13B commences on the investigation of a possible criminal violation"-not an actual crime (emphasis added). Commonwealth v. Figueroa, 464 Mass. 365, 371, 982 N.E.2d 1173 (2013). To require proof that a predicate crime was committed before the act of intimidation would be contrary to the statute's plain language and the intent of the 2006 amendment that added this provision. See St. 2006, c. 48, § 3; Figueroa, supra at 368-369, 982 N.E.2d 1173 (noting 2006 amendments were intended to broaden scope of protections and prohibited conduct); Hrycenko v. Commonwealth, 459 Mass. 503, 508, 945 N.E.2d 915 (2011) (amendments "expressly expanded" scope of § 13B ).
Further, the statute's reference to a "potential witness at any stage of a criminal investigation" indicates that the investigation need not have already begun when the intimidation occurred. "Potential" means "[c]apable of being but not yet in existence; latent." American Heritage Dictionary of the English Language 1025 (New College ed. 1980). See Webster's Third New International Dictionary 1775 (1963) (defining "potential" as "existing in possibility: having the capacity or a strong possibility for development into a state of actuality"); Black's Law Dictionary 1357 (10th ed. 2014) (defining "potential" as "[c]apable of coming into being; possible if the necessary conditions exist"). See, e.g., Boelter v. Selectmen of Wayland, 479 Mass. 233, 239, 93 N.E.3d 1163 (2018), quoting Boylston v. Commissioner of Revenue, 434 Mass. 398, 405, 749 N.E.2d 684 (2001) ("We usually determine the plain and ordinary meaning of a term by its dictionary definition"). Consistent with these definitions, we have described a potential witness as, inter alia, a person who might observe further criminal activity or testify at a future proceeding. See Commonwealth v. Brown, 479 Mass. 163, 167-168, 92 N.E.3d 1189 (2018) (describing "potential witness" as witness to "further criminal activity"). See also Commonwealth v. Squires, 476 Mass. 703, 711, 71 N.E.3d 520 (2017) (Gaziano, J., dissenting) (describing "potential witnesses" as persons who might see crime occurring); Commonwealth v. McCreary, 45 Mass. App. Ct. 797, 800, 702 N.E.2d 37 (1998), **126 citing Commonwealth v. Belle Isle, 44 Mass. App. Ct. 226, 230, 694 N.E.2d 5 (1998) (describing victim of intimidation as "potential witness" where there was no ongoing investigation, but defendant prevented victim from contacting police by destroying telephone). Thus, a "potential witness at any stage of a criminal investigation" includes persons who are likely to participate in a future investigation that has not yet begun.
This interpretation is consistent with previous Appeals Court decisions, which have concluded that the purpose of G. L. c. 268, § 13B, includes "deterring interference with future communication of information," and that, consequently, "[a]
*302 criminal investigation need not have commenced" for the statute to apply. Commonwealth v. King, 69 Mass. App. Ct. 113, 121, 866 N.E.2d 938 (2007), quoting Commonwealth v. Burt, 40 Mass. App. Ct. 275, 278, 663 N.E.2d 271 (1996). "It is enough that the jury reasonably conclude from the surrounding circumstances that it was likely that the victim would furnish to an official investigating authority information pertaining to the crime and that the defendant intended to discourage such communication." King, supra. In Belle Isle, 44 Mass. App. Ct. at 227, 229, 694 N.E.2d 5, the Appeals Court rejected the defendant's argument that the statute did not apply to him because there was no ongoing criminal investigation when he severed a telephone cord from the wall to prevent his sister from contacting the police to report the defendant's assault on her husband.[4]
We therefore conclude that to convict the defendant of witness intimidation under G. L. c. 268, § 13B (1) (c ) (i), the Commonwealth had to prove that (1) a possible criminal violation occurred that would trigger a criminal investigation or proceeding; (2) the victim would likely be a witness or potential witness in that investigation or proceeding; (3) the defendant engaged in intimidating behavior, as defined in the statute, toward the victim; and (4) the defendant did so with the intent to impede or interfere with **127 the investigation or proceeding, or in reckless disregard[5] of the impact his conduct would have in impeding or interfering with that investigation or proceeding. The Commonwealth was not required to prove that an actual crime had occurred or that a criminal investigation was in progress when the alleged intimidation occurred.
With this legal framework in mind, we now turn to the particulars of the present case. In closing argument, the prosecutor argued to the jury that the victim "wanted to call 911 because [the defendant] was using ... abusive language, was getting louder, and was getting louder every time that he was using that abusive language," but when "[s]he took her phone out and attempted to call 911," the defendant "grabbed her phone from her, prevented her from calling 911." "That's intimidation of a witness," the prosecutor asserted.[6] After careful review of the record in the light most favorable to the Commonwealth, we conclude that the evidence was insufficient to support a conviction on this basis. The evidence did not permit a rational trier of fact to find that, *303 at the point in time when the defendant took the victim's cellular telephone, a possible criminal violation had occurred that would trigger a criminal investigation or proceeding in which the victim was likely to be a potential witness, and that the defendant intended to interfere with such an investigation or proceeding.
The victim testified that the defendant loudly called her "nasty names," which hurt her feelings and made her cry, and that as soon as she said she was going to call 911, the defendant took her cellular telephone from her and begged her not to call. The prosecutor did not elicit any details from the victim, however, about how exactly the defendant took her cellular telephone, or whether he had made any kind of verbal threats or physical movements toward her, either before taking her cellular telephone or when he did so. Thus, although the Commonwealth characterizes **128 the defendant's conduct as "assaultive behavior," it presented no evidence at trial to support that characterization by showing that the defendant attempted a battery or sought to put the victim in fear of an immediately threatened battery at that point in time. See Commonwealth v. Gorassi, 432 Mass. 244, 247-248, 733 N.E.2d 106 (2000) ("Under the common law, an assault may be accomplished ... either by an attempted battery, or by putting another in fear of an immediately threatened battery.... In the case of a threatened battery type of assault, the Commonwealth must prove that the defendant engaged in 'objectively menacing' conduct with the intent to put the victim in fear of immediate bodily harm"). See also Commonwealth v. Lavrinenko, 473 Mass. 42, 56, 38 N.E.3d 278 (2015) ("The victim's apprehension of imminent physical harm must be reasonable. In determining whether an apprehension of anticipated physical force is reasonable, a court will look to the actions and words of the defendant in light of the attendant circumstances" [citations omitted] ).
In sum, the Commonwealth failed to present a case that the defendant engaged in anything more than abusive speech before he took the victim's cellular telephone. Consequently, we are constrained to conclude that there was insufficient evidence for the jury to find that, at the moment when the defendant took the victim's cellular telephone, a possible criminal violation had occurred; that a criminal investigation would ensue in which the victim would likely become a potential witness; and that the defendant intended to interfere with that anticipated investigation.[7]
The prosecutor could have made a different argument to the jury, for which the evidence was sufficient to convict the defendant of witness intimidation. The prosecutor could have argued that, once the defendant grabbed the victim's arms and pushed **129 her away as she attempted to *304 leave the apartment, the victim had knowledge of a possible criminal violation, such as assault or assault and battery, and therefore became a "potential witness at any stage of a criminal investigation." See G. L. c. 268, § 13B (1) (c ). The prosecutor could also have argued that, by choking the victim, banging her head against the wall, and preventing her from leaving the apartment, the defendant "attempt[ed] or cause[d] physical injury" to the victim or "intimidate[d]" her within the meaning of the statute. See G. L. c. 268, § 13B (1) (a ), (c ). And finally, given the victim's testimony that she had told the defendant she wanted to leave to call 911, that he begged her not to do so, and that he said he was not going to let her leave, the prosecutor could have argued that the defendant attempted or caused physical injury to the victim or intimidated her to prevent her from contacting the police, i.e., with the intent to interfere with a criminal investigation. See G. L. c. 268, § 13B (1) (c ) (v).
But we cannot affirm the defendant's conviction on this alternative ground, even though it was open to the jury to consider under the trial judge's instructions,[8] because we have no way of knowing whether the jury's verdict was based on this ground or on the defendant's isolated act of taking the victim's cellular telephone, as the prosecutor argued. "[I]f the evidence presented to the jury would warrant a conviction on one ground, but not on another, and it is impossible to tell on which ground the jury relied, the verdict must be set aside on appeal." Commonwealth v. Rollins, 470 Mass. 66, 78, 18 N.E.3d 670 (2014), quoting Chambers v. Commonwealth, 421 Mass. 49, 51-52, 653 N.E.2d 170 (1995).[9] Indeed, given the prosecutor's singular focus on the defendant's act of taking the victim's cellular telephone as the ground for the witness intimidation charge, the jury may well have convicted the defendant based on that isolated act, even though the evidence was insufficient to show that a possible criminal violation had occurred at that point in time. In light of these circumstances, we must reverse the defendant's **130 conviction. "It is well established in this Commonwealth that a verdict cannot stand unless it appears that the jury reached their verdict on a theory for which there was factual support." Commonwealth v. Plunkett, 422 Mass. 634, 635, 664 N.E.2d 833 (1996). The Commonwealth may retry the defendant on the charge of witness intimidation based on the alternative ground set forth above, since sufficient evidence was introduced to support a conviction on that basis.[10] See Gorassi, 432 Mass. at 249-250, 733 N.E.2d 106. *305 3. Conclusion. The judgment is reversed, and the verdict is set aside.
So ordered.

The jury acquitted the defendant of four related offenses arising from the same incident. See part 1, infra.

Here and throughout this opinion we cite G. L. c. 268, § 13B, as it was in effect at the time of the alleged crime and the defendant's conviction and sentencing. We note that the statute was substantially reorganized and rewritten by the criminal justice reform bill enacted in April, 2018, see St. 2018, c. 69, § 155, but the 2018 amendment has no bearing on this case. See Commonwealth v. Galvin, 466 Mass. 286, 290, 995 N.E.2d 27 (2013) ("As a general rule of statutory construction, a newly enacted statute is presumptively prospective ..."); G. L. c. 4, § 6, Second ("The repeal of a statute shall not affect any punishment, penalty or forfeiture incurred before the repeal takes effect ...").

In arguing that G. L. c. 268, § 13B (1) (c ) (i), requires proof that a predicate crime was committed before the act of intimidation, the defendant relies on G. L. c. 268, § 13B (1) (c ) (ii), which protects "a person who is or was aware of information, records, documents or objects that relate to a violation of a criminal statute, or a violation of conditions of probation, parole or bail." That is not, however, the part of the statute under which the Commonwealth prosecuted the defendant and the trial judge charged the jury.

We recognize that these Appeals Court decisions concerned an earlier version of G. L. c. 268, § 13B, that lacked the statutory clause at issue here-"potential witness at any stage of a criminal investigation" -which was added by amendment in 2006. But we think it unlikely that the Legislature intended thereby to narrow the statute's scope by newly requiring that a criminal investigation or other proceeding be pending at the time of the alleged intimidation, given that the purpose of the 2006 amendments was to broaden the statute's coverage. See Commonwealth v. Figueroa, 464 Mass. 365, 368-369, 982 N.E.2d 1173 (2013).

"A defendant's reckless disregard of the possibility that his or her conduct might interfere with the proceeding at issue also is sufficient to establish this element of the statute." Commonwealth v. Paquette, 475 Mass. 793, 797 n.5, 62 N.E.3d 12 (2016), citing G. L. c. 268, § 13B (1) (c ) (v). In this case, however, the trial judge did not include the reckless disregard standard in his jury instruction, and consequently we do not consider it further in deciding whether to affirm the defendant's conviction.

Although the prosecutor subsequently stated more generally, in discussing the witness intimidation charge, that the victim "attempted to call the police for help" and that the defendant "prevented her from doing that," he did not identify any other alleged actions by the defendant as the basis for that charge.

We disagree, however, with the defendant's contention that taking the victim's cellular telephone was not sufficient to constitute "intimidat[ion]" under G. L. c. 268, § 13B (1) (c ) (i). The statute "does not require that a defendant specifically articulate a threat not to speak to the police or other criminal investigator." Commonwealth v. King, 69 Mass. App. Ct. 113, 120, 866 N.E.2d 938 (2007). And an "action does not need to be overtly threatening to fall within the meaning of 'intimidation.' " Commonwealth v. Cohen (No. 1), 456 Mass. 94, 124, 921 N.E.2d 906 (2010), quoting Commonwealth v. Casiano, 70 Mass. App. Ct. 705, 708, 876 N.E.2d 475 (2007). Especially given the central place of cellular telephones as a means of communication in contemporary life, depriving a victim of access to one can certainly qualify as an act of intimidation when a potential witness seeks to report a possible criminal violation. Cf. Commonwealth v. Belle Isle, 44 Mass. App. Ct. 226, 230, 694 N.E.2d 5 (1998).

In response to a question from the jury about the criteria for witness intimidation, the judge instructed them that the charge of intimidation "relates to the Commonwealth's allegation of what happened inside the apartment and [the defendant] allegedly preventing [the victim] from leaving and/or taking her cell phone."

For example, in Commonwealth v. Rollins, 470 Mass. 66, 78-79, 18 N.E.3d 670 (2014), we reversed a defendant's conviction on one count of possession of child pornography where the Commonwealth submitted two photographs to the jury, only one of which was pornographic under the relevant statute, and there was no way of discerning which photograph was the premise for the jury's guilty verdict.

The defendant also argues that the trial judge abused his discretion by admitting in evidence a letter and drawings that the defendant later sent to the victim. The defendant contends that these documents constituted uncharged bad acts evidence the prejudicial effect of which outweighed their probative value, and that the jury may have based their verdict on these documents rather than on the events on December 25, 2015. While this argument is moot in light of our ruling above, we address the issue in case it resurfaces at a new trial. The trial judge specifically and repeatedly instructed the jury that the letter and drawings were admitted for the limited purposes of showing the defendant's consciousness of guilt, that the defendant was not charged with any crime based on those documents, and that they were not the basis for the witness intimidation charge. "We generally 'presume that a jury understand and follow limiting instructions, ... and that the application of such instructions ordinarily renders any potentially prejudicial evidence harmless.' " Commonwealth v. Crayton, 470 Mass. 228, 251, 21 N.E.3d 157 (2014), quoting Commonwealth v. Donahue, 430 Mass. 710, 718, 723 N.E.2d 25 (2000).