NORDSTROM, COMMONWEALTH vs., 100 Mass. App. Ct. 493

 
 COMMONWEALTH vs. HILMA NORDSTROM (and three companion cases [Note 1]).

100 Mass. App. Ct. 493
 September 15, 2021 - November 23, 2021

Court Below: District Court, Attleboro Division
Present: Vuono, Blake, & Englander, JJ.

 

False Impersonation & Identity Fraud. False Pretenses. Police Officer. Intimidation of Witness. Witness, Intimidation. Intent. Criminal Harassment. Practice, Criminal, Assistance of counsel.

At the trial of a criminal complaint charging impersonating a police officer in violation of G. L. c. 268, § 33, the evidence was sufficient for the jury to find that the defendants falsely pretended or assumed the role of police officers, even though one of the defendants was in fact a military police officer, where they arrived at the victim's home, unannounced with a notepad in hand, and asked to speak to the victim while having no authority with respect to the matter they wished to discuss and no basis to gain entry to the victim's home [496-498]; further, although the Commonwealth was not required to prove that the defendants did not have an honest belief that their conduct was lawful, the jury could infer from the circumstances that the defendants made statements to the victim knowing that they were engaging in an intentional pretense [498-499].

At a criminal trial, the evidence was sufficient to convict the defendants of intimidation of a witness in violation of G. L. c. 268, § 13B, where an impending proceeding against the defendants' immediate relative, although unrelated to a rape allegation made by the victim of that relative several years earlier, satisfied the statutory requirement that the intimidation relate to a criminal investigation or proceeding [499-501]; and where, in the circumstances of the case, the jury could find that the victim was harassed [501-502].

At a criminal trial, there was no merit to a defendant's claim that she received ineffective assistance of counsel, where trial counsel's decision, which was likely a strategic choice, to disclose a recording of the conversation between the defendant and the victim, could not be said to have been manifestly unreasonable. [502-503]

COMPLAINTS received and sworn to in the Attleboro Division of the District Court Department on December 10, 2014.

 The cases were tried before Daniel J. O'Shea, J.

 Page 494 

 Adrian LeCesne for the defendants.

 Mary E. Lee, Assistant District Attorney, for the Commonwealth.

 ENGLANDER, J. After a jury trial in the District Court, the two defendants, Danell C. French and Hilma Nordstrom, were each convicted of impersonating a police officer and intimidation of a witness. Based on the evidence at trial, the jury could have found that French and Nordstrom knocked on the door of the victim's home, and when he answered the door, the defendants advised the victim that "they" were police officers, after which the victim brought them inside. Once inside, French and Nordstrom instead stated that they were the sister and mother, respectively, of the victim's former boyfriend (hereafter, French's brother), and that they wanted to talk to the victim about an allegation that the victim had made, nine years earlier, that French's brother had raped him. The defendants stated that French's brother would be appearing in court the following day on a different matter, and they implored the victim to admit that he had lied about the rape allegation, and to sign a paper to help French's brother in the impending proceeding. The victim refused. Much of this conversation was recorded by French, and the recording was played for the jury.

 On appeal, the defendants primarily challenge the sufficiency of the evidence as to each conviction. Among other things, French argues that she cannot be guilty of impersonating a police officer because she was, in fact, a military police officer. And both defendants argue that they cannot be guilty of witness intimidation, because at the time they confronted the victim there was no active criminal investigation of the nine year old rape charges. We affirm the judgments.

 Background. In October of 2005, the victim in this case, then age seventeen, reported to the Foxborough police that he had been raped by French's brother a few months earlier. The Foxborough police opened an investigation, but the case did not move forward. As of December 2014, when the events at issue in the case before us took place, there had been no activity in the investigation since 2005. [Note 2]

 On December 9, 2014, the victim was twenty-six years old and 

 Page 495 

living at his parents' home in Attleboro. He heard a knock at the door. He opened the door and saw the two defendants standing there; one of them held a notepad. The victim testified that "they" identified themselves as police officers. The victim could not recall which of the two defendants first made this statement. The defendants were not in uniform. The victim testified that he believed the defendants were police officers, and that as a result he invited them to come inside.

 Once inside, the defendants instead told the victim that they were the sister and mother of French's brother. The victim testified that the defendants said that they "wanted [him] to sign some piece of paper saying that [he] lied about the statements that [he] made to the Foxboro[ugh] Police." The conversation went on for approximately ten minutes. Both of the defendants spoke to the victim. At some point, French began recording the conversation.

 On the recording, both defendants can be heard questioning the victim's truthfulness and pressuring the victim to recant the rape allegation. French began by telling the victim that one of the victim's acquaintances had called the victim a liar, and had alleged that the victim "lied about everything." Nordstrom also asked the victim, "Do you realize the charges that you made, whether they're true or false, are serious charges, and you could put a man away for life . . . that is something I would never want on my conscience, ever, if I was a liar."

 The victim asked the defendants why the incident was "coming back up," and the defendants both told him that French's brother was being "charged" in court the following day. French said she was "trying . . . to save [her] brother and his life," and Nordstrom again asked the victim to write a statement retracting his allegations. Toward the end of the recording, French said that she was a "police officer, I've been a police officer in the military for fifteen years."

 French can also be heard confronting the victim in what the jurors could have found was an aggressive tone. At one point, for example, she said loudly, "I notice that you don't use the word rape . . . . Did he rape you? Did he rape you? Did he rape you?" The victim can be heard stating throughout the encounter that he had not lied, that French's brother had in fact raped him, and that he would not sign a document retracting his claims.

 Both defendants testified, and denied that they had stated they were police officers prior to gaining entry to the home. The jury

 Page 496 

 returned guilty verdicts, as described previously. These appeals followed.

 Discussion. 1. Impersonating a police officer. General Laws c. 268, § 33, sets forth the crime of impersonating a police officer:

"Whoever falsely assumes or pretends to be a . . . police officer . . . and acts as such or requires a person to aid or assist him in a matter pertaining to the duty of such officer, shall be punished . . . ."

 The statute has rarely been cited in our case law, but by its plain language it requires that a person (1) falsely assumed or pretended to be a police officer, and (2) acted as a police officer or required a person to aid or assist them in a matter pertaining to the duty of a police officer. See United States v. Roe, 606 F.3d 180, 186 (4th Cir.), cert. denied, 562 U.S. 1051 (2010) (interpreting similar Federal statute).

 Here the defendants argue that the Commonwealth failed to prove the required elements of the crime. We review the sufficiency of the evidence to determine whether "there was enough evidence that could have satisfied a rational trier of fact of each . . . element beyond a reasonable doubt." Commonwealth v. Latimore, 378 Mass. 671, 677-678 (1979). To do so, we consider the evidence "in the light most favorable to the Commonwealth." Commonwealth v. Kobrin, 72 Mass. App. Ct. 589, 597 (2008).

 a. Proof of false assumption or pretense. We are not persuaded that there was insufficient evidence. As to defendant French, she first questions whether she could be found to have "falsely assume[d] or pretend[ed]" to be a police officer where she was in fact a military police officer. The answer to that question is yes -- a police officer can nevertheless violate the statute, if by words or conduct they state, or can reasonably be understood to represent, that they hold an office that they do not in fact hold. If, for example, French had said to the victim that she was an Attleboro police officer (that is, an officer of the town where he resided), the representation plainly would have been false, and would have met the requirement of a false pretense or assumption. We are of the view that the representation in this case was not materially different. [Note 3]

 Page 497 

 Here, the defendants' statement at the door that they were police officers could reasonably have been understood as a representation (at least, a jury could so find) that the defendants had some authority in the situation, such that the victim should give them deference, let them into his home, and speak with them. The jury also could have found that the defendants reinforced this false impression through their actions -- arriving unannounced at the victim's home early in the morning, notepad in hand, asking to talk. Even assuming French was a military police officer, as she stated on the recording, she had no authority with respect to the matter she wished to discuss, and no basis to gain entry to the victim's home. The jury thus could reasonably have found that she falsely pretended or assumed the role of a police officer.

 The case law from other jurisdictions is in accord. In Roe, the United States Court of Appeals for the Fourth Circuit addressed a situation where the defendant activated his vehicle's emergency lights and pulled over another vehicle on the Baltimore-Washington Parkway, even though the defendant had no authority to do so, as he was a security officer with authority only over a certain property of the National Aeronautics and Space Administration. Roe, 606 F.3d at 182-183. The court rejected the defendant's argument that because he was in fact a Federal officer, he could not be found guilty of the Federal crime of impersonating a Federal officer. Id. at 186. The court concluded that "[t]he prohibition . . . is on impersonating the officer or employee that the person is not, regardless of what the person's actual position may be" (emphasis added). Id. Cf. People v. Martinez, 197 A.D.2d 540, 541 (N.Y. App. Div. 1994) (under New York statute prohibiting impersonation of police officer, correction officer could be guilty "not only when he misrepresents who he is, but also when he represents that he is acting with the approval or authority of a police department, thereby abusing his status and position of authority").

 Defendant Nordstrom argues, separately, that the Commonwealth did not prove that she falsely pretended or assumed the role of a police officer, because French was the only one who identified herself as a police officer. We disagree. The victim testified

 Page 498 

 at trial that "they said they were police" (emphasis added). Nordstrom presented herself with French, standing right next to her, with one of the defendants carrying a notepad. As a result of that representation, both defendants gained entry into the victim's home. The victim testified that after the representation was made, he believed that the defendants were police officers. The jury were entitled to weigh the evidence, and to credit the victim's testimony over that of the defendants. See Commonwealth v. Celester, 473 Mass. 553, 562 (2016). Nordstrom's arguments that she was elderly and did not "look like" a police officer are not persuasive, as on a sufficiency review we consider the evidence in the light most favorable to the Commonwealth. [Note 4]

 b. Proof of intent. The defendants also contend that the Commonwealth failed to prove that they had the required intent; they argue, for example, that the Commonwealth was required to show that French and Nordstrom did not have an "honest belief that . . . [their] conduct was lawful."

 Again, we do not agree. To begin, we do not adopt the defendants' suggestion that "intent" is a separate element of the crime in addition to the elements identified above. The statute does not expressly state that "intentional" or "willful" conduct is required. See G. L. c. 268, § 33. Nevertheless, we agree that the crime requires that the defendant intended to misrepresent himself or herself; such is evident in the statute's language, which requires that the defendant "falsely assume[ed] or pretend[ed]" to be an officer. Id. The plain meaning of that language requires an intentional, affirmative deception -- that is, a pretense. To "pretend" means "to give a false appearance of being, possessing, or performing" or "to feign an action, part, or role." Merriam-Webster's Collegiate Dictionary 984 (11th ed. 2020). Similarly, one of the meanings of "assume" is "to pretend to have or be." Id. at 75. One does not accidentally or negligently pretend or assume a role; rather, intent is required. [Note 5]

 Nevertheless, here the evidence was sufficient, under the Latimore 

 Page 499 

standard, for the jury to find an intentional pretense. Latimore, 378 Mass. at 678. The defendants arrived at the victim's door and their first words were that they were police officers. From this introduction they were able to gain entrance to the victim's home and an audience with him; they also presented to him an aura of authority. See United States v. Robbins, 613 F.2d 688, 692 (8th Cir. 1979) (defendant's actions went "beyond 'mere bravado'" and were imitations of "integral parts of the official routine of an FBI agent"). The defendants' goal was to convince the victim to recant his prior allegations, and to sign a document to that effect. The jury could infer from the circumstances that the defendants made the statements with knowledge that they were engaging in a pretense, and for the exact purpose of gaining an audience with the victim that they otherwise might not obtain. [Note 6] See Commonwealth v. Liakos, 12 Mass. App. Ct. 57, 59 (1981) ("intent may be, and usually must be, proved by circumstantial evidence").

 2. Intimidation of a witness. General Laws c. 268, § 13B (1) (c), as amended through St. 2010, c. 256, § 120, [Note 7] defines the crime of intimidation of a witness:

"Whoever, directly or indirectly, willfully . . . misleads, intimidates or harasses another person who is . . . a witness or potential witness at any stage of a criminal investigation, grand jury proceeding, trial or other criminal proceeding of any type . . . with the intent to impede, obstruct, delay, harm, punish or otherwise interfere thereby, or do so with reckless disregard, with such a proceeding shall be punished . . . "

 Distilled down, the required elements of witness intimidation are that the defendant must (1) willfully; (2) mislead, intimidate, 

 Page 500 

or harass; (3) a witness or potential witness in a criminal proceeding of any type; (4) with the intent to impede or interfere with a criminal investigation or proceeding, or with reckless disregard for whether such impedance or interference may result. See Commonwealth v. Fragata, 480 Mass. 121, 126-127 (2018). [Note 8] The defendants again argue that the Commonwealth failed to prove all the required elements.

 a. Investigation or proceeding. The defendants' principal contentions center on the fact that there had been no investigative action with respect to the 2005 rape allegation for over nine years, and they argue accordingly that there was no "criminal investigation" or "proceeding" with which they could have interfered. The Commonwealth responds that the inaction was only because the victim had chosen not to participate, and that the case was still "open" in the event the victim changed his mind.

 We need not decide whether the 2005 police "investigation" could provide the basis for the witness intimidation charge, because there was sufficient evidence here that the defendants were attempting to interfere with another "investigation" or "proceeding" -- the matter involving French's brother that was to take place the following day. On the recording, French says that her brother "is going to be charged tomorrow for something horrendous . . . is there any type of letter you can write . . . that you can give me right now that I can submit to the court . . . ." She testified at trial that her brother was to be sentenced in connection with another case within days of December 9, 2014. Plainly, French was aware that there was a pending criminal matter, and her statements showed that she and Nordstrom were asking the victim to sign a document that could be used as that matter was being investigated or heard. Similarly, Nordstrom testified that French's brother (Nordstrom's son) told her that "he's going to be charged with [the victim] stating that he raped him." Moreover, the defendants were each attempting to affect (that is, to interfere with) the testimony of a potential witness in that proceeding. See Commonwealth v. Cohen (No. 1), 456 Mass. 94,

 Page 501 

 124 (2010) (interference shown by attempts to convince potential witnesses to "execute written statements containing factual inaccuracies").

 The impending proceeding accordingly satisfied the requirement that the intimidation relate to a "criminal investigation" or "criminal proceeding." In this regard, the language of the statute is broad; it applies to "criminal proceeding[s] of any type." [Note 9] G. L. c. 268, § 13B (1) (c). The Supreme Judicial Court has concluded "that the Legislature meant to include within the rubric of criminal proceeding[s] of any type any investigation or proceeding that may result in criminal-type sanctions, such as loss of liberty" (quotation omitted). Commonwealth v. Figueroa, 464 Mass. 365, 370 (2013).

 b. Intimidation or harassment. The defendants also argue that there was insufficient evidence of intimidation because the victim was not actually intimidated, but once again, we disagree.

 The Commonwealth does not need to prove that the victim of witness intimidation was actually intimidated or frightened. See Commonwealth v. Rivera, 76 Mass. App. Ct. 530, 535 (2010). Furthermore, the statute encompasses more than just intimidation -- it also prohibits "harass[ment]" of potential witnesses. G. L. c. 268, § 13B (1) (c). "Harass" is a defined term in the statute; it is "to engage in any act directed at a specific person or persons, which act seriously alarms or annoys such person or persons and would cause a reasonable person to suffer substantial emotional distress." G. L. c. 268, § 13B (3).

 Both the testimony and the recording demonstrate the sufficiency of the evidence as to this element. The defendants' actions were directed at the victim, and the jury could have found that French's voice on the recording was loud, and at times intimidating. French and Nordstrom asked the victim to recant, and they did not take an initial "no" for an answer, but pressed on. See Cohen (No. 1), 456 Mass. at 120, 124 (defendant police officer's repeated requests for witness to sign inaccurate document to be used in court sufficient to constitute witness intimidation). French 

 Page 502 

and Nordstrom also emphasized the potential consequences French's brother faced in the upcoming proceeding, appealing not to fact but to sympathy. French also challenged the victim as to his understanding of the word "rape." The victim was unduly pressured and on the defensive, and he testified that he felt "really nervous." The defendants' actions thus not only constituted intimidation but also met the definition of "harass" -- to "seriously alarm[] or annoy[] . . . and . . . cause a reasonable person to suffer substantial emotional distress." [Note 10] G. L. c. 268, § 13B (3).

 3. Ineffective assistance of counsel. Finally, French argues that she received ineffective assistance of counsel because her trial counsel voluntarily provided to the Commonwealth the recording she made of her interaction with the victim. We disagree.

 French has the burden of proving that counsel's performance fell "measurably below that which might be expected from an ordinary fallible lawyer" and that it "likely deprived the defendant of an otherwise available, substantial ground of defence." Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). French has not filed a motion for a new trial, and therefore we have no affidavit from trial counsel that addresses counsel's strategy with respect to the recording. French's claim thus presents "the weakest form of [an ineffective assistance] challenge because it is bereft of any explanation by trial counsel for his actions and suggestive of strategy contrived by a defendant viewing the case with hindsight." Commonwealth v. Peloquin, 437 Mass. 204, 210 n.5 (2002). A strategic decision by trial counsel only constitutes ineffective assistance of counsel if it "was manifestly unreasonable when made" (quotation and citation omitted). Commonwealth v. Kolenovic, 471 Mass. 664, 674 (2015), S.C., 478 Mass. 189 (2017).

 Here, French's trial counsel's decision to disclose the recording was likely a strategic choice. French's counsel used the recording extensively at trial to argue that the defendants had not acted criminally -- that the defendants were sympathetic when the victim spoke about familial difficulties, that they did not overtly threaten the victim, that they exchanged pleasantries, and that they were never asked to leave. Moreover, counsel may well have expected that the Commonwealth would find out about the recording and request it, given that French testified that she had 

 Page 503 

received permission from the victim to record the interaction. We cannot say, on this record, that counsel's strategy was manifestly unreasonable. [Note 11]

 Judgments affirmed.

FOOTNOTES
[Note 1] One of the companion cases is against Hilma Nordstrom, and two are against Danell C. French. 

[Note 2] A Foxborough police officer testified at trial that the investigation was, nevertheless, "open and active." He also testified that the matter would be charged if the victim wanted to go forward with the charges. 

[Note 3] We note that the statute not only prohibits the impersonation of police officers, but also many other specific categories of public official -- for example, "justice of the peace, notary public, sheriff, deputy sheriff, medical examiner, associate medical examiner, constable, police officer, probation officer, or examiner, investigator or other officer appointed by the registrar of motor vehicles," and so on. G. L. c. 268, § 33. The listing of these many specific categories reinforces our view that the statute is directed at the false assumption of a specific position or authority. 

[Note 4] Similarly, a jury could find that both defendants "acted as" police officers by using their stated identification as officers to gain entry to the victim's home. 

[Note 5] As noted, the statute has a separate requirement that the defendant "act as such" -- in other words, act as a police officer. Several United States Courts of Appeals interpreting a similar Federal statute, 18 U.S.C. § 912, have held that "intent to defraud . . . is present for a[n] [impersonation] offense whenever the element 'acting as such' is proven" (citation omitted). United States v. Wilkes, 732 F.2d 1154, 1159 (3d Cir.), cert. denied, 469 U.S. 964 (1984). See United States v. Robbins, 613 F.2d 688, 691 (8th Cir. 1979); United States v. Rosser, 528 F.2d 652, 656 (D.C. Cir. 1976). 

[Note 6] The defendants note that the jury asked the judge a question during their deliberation: "Can we have the criteria of impersonation of a police officer charge?" The judge responded by rereading the same jury charge he had given originally, which tracked the language of the statute, but did not elaborate on it. The defendants argue that the judge should have given a jury instruction as to "intent." The jury's question, however, did not ask about intent but rather asked broadly about the elements of impersonating a police officer. The judge responded appropriately to the jury's question, and there was no error. 

[Note 7] Throughout our decision, we apply the version of the statute in effect at the time of the offenses in December 2014. The statute was rewritten and reorganized in 2018. See G. L. c. 268, § 13B, as appearing in St. 2018, c. 69, § 155; Commonwealth v. Fragata, 480 Mass. 121, 122 n.2 (2018). 

[Note 8] The court in Fragata stated the elements somewhat differently, but Fragata was decided in a different context than this case -- intimidation of a witness after the crime had occurred but before any investigation had been triggered. See Fragata, 480 Mass. at 123. The elements set forth herein are consistent with the elements in Fragata, but tailored to apply to witness intimidation after a crime has been reported or charged. 

[Note 9] As noted, on appeal the Commonwealth argues that the "investigation" the defendants interfered with is the 2005 rape case, as opposed to the criminal matter involving French's brother that was referenced on the recording. However, neither the Commonwealth's arguments at trial, nor the judge's instructions to the jury, were so limited. We may affirm on any ground supported by the record. See Brangan v. Commonwealth, 477 Mass. 691, 698 n.12 (2017). 

[Note 10] Indeed, French admitted during her testimony that the victim was visibly emotionally stressed -- in her words, "he broke down." 

[Note 11] Nordstrom also asserts an ineffective assistance of counsel claim based on her trial counsel's failure to sever her case from French's case, and her counsel's failure to request joint venture instructions. As with French, Nordstrom did not file a motion for a new trial or provide an affidavit from trial counsel. See Peloquin, 437 Mass. at 210 n.5. Regardless, this argument is without merit. Both Nordstrom and French asserted the same primary defense -- that the victim was not credible and that Nordstrom and French were credible. The defense strategies therefore complemented one another and were not unfairly antagonistic in a manner that required severance. See Commonwealth v. Akara, 465 Mass. 245, 256 (2013). 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.