NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-507

COMMONWEALTH

vs.

HEROILDO CANDELARIO.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Heroildo Candelario (Heroildo),[1] appeals from convictions stemming from, among other things, the sexual assaults of his four nieces.  His codefendant, Gilbert Candelario, also known as Gilberto Candelario (Gilberto), was also convicted of sexually assaulting the same four nieces, and his own daughter, Nancy.[2]  On appeal, Heroildo claims that the judge abused her discretion by denying, in part, his motion to sever and allowing, in part, the Commonwealth's motion for

_____

[1] As they share a surname, we refer to the defendant and the codefendant by their first names.

[2] We use pseudonyms to refer to the victims.

joinder.  He also contends that the evidence of intimidation of a witness was insufficient.  We affirm.

Procedural history.  Heroildo was indicted on twenty-six charges related to his four nieces, Ann, Julie, Mandy, and Regan, under Superior Court Docket No. 1777CR00500 (docket no. 500).  Gilberto was indicted on seventeen charges related to these same four victims under Superior Court Docket No. 1777CR00501 (docket no. 501), and eight charges related to two additional victims, his daughter Nancy, and his sister-in-law Mary, under Superior Court Docket No. 1777CR00659 (docket no. 659).  As will be discussed in more detail below, the Commonwealth moved to join for trial Gilberto's new case (docket no. 659) with the already joined cases against Gilberto and Heroildo (dockets no. 500 and 501).  Heroildo filed a motion to sever docket no. 659 only.[3]  He did not move to sever docket nos. 501 and 500, and defense counsel conceded that those two dockets "involve the same alleged victims and the same sort of set of factual circumstances."

In support of its argument for joinder, the Commonwealth argued that the "conduct took place in a similar manner, was perpetrated against victims around the same age and around the

_____

[3] Gilberto filed a motion to sever docket no. 501 from docket no. 659 and opposed the Commonwealth's motion for joinder.

2

same time and at the same location."  In addition, the Commonwealth noted that Nancy made similar observations to those of the other four victims regarding their grandmother, the "comings and goings" of Heroildo and Gilberto, and the defendants' access to Ann, Julie, Mandy, and Regan during the relevant timeframe.  As to Mary,[4] the Commonwealth acknowledged that the argument for joinder of docket no. 659 was "weaker," but that Gilberto's similar pattern of behavior with all the victims was the "link."  Finally, it argued that joinder was in the "best interests of justice."  See Mass. R. Crim. P. 9 (a) (3), 378 Mass. 859 (1979).

In moving to sever and in opposing the motion for joinder of docket no. 659, Heroildo stressed that different victims were involved, and it would be "too prejudicial" and "too confusing for the jury."  He focused on the fact that the allegations in docket no. 659 took "place in a different time frame" with different victims.  Again, Heroildo did not move to sever and did not oppose the motion for joinder of docket no. 501.  After a hearing, the judge allowed the Commonwealth's motion to join docket no. 501 and so much of docket no. 659 relating to crimes allegedly committed against Nancy.  The judge denied the

---

[4] Gilberto's abuse of Mary involved touching, not penetration, at different points in time than the other victims, and in a different location.

Commonwealth's motion to join so much of docket no. 659 relating to crimes allegedly committed against Mary.  The rulings operated to deny, in part, Heroildo's motion to sever.

Discussion.  1.  Joinder.  "The decision whether to join offenses for trial is a matter left to the sound discretion of the judge, . . . and will not be reversed unless there has been 'a clear abuse of discretion'" (citation omitted).  Commonwealth v. Pillai, 445 Mass. 175, 179-180 (2005).  "Severance . . . should be ordered when (1) the prejudice resulting from a joint trial is so compelling that it prevents a defendant from obtaining a fair trial, or (2) the defenses are antagonistic to the point of being mutually exclusive" (quotations and citations omitted).  Commonwealth v. Watson, 487 Mass. 156, 168 (2021).  Here, the defenses were consistent:  the victims were inconsistent and incredible, and thus under the second basis, severance was not warranted.  See Commonwealth v. Sosa, 493 Mass. 104, 113 (2023) (example of defenses that were not mutually antagonistic).

Heroildo did not meet his burden to demonstrate prejudice where he objected to the joinder of docket no. 659, but not to the joinder of docket no. 501.  Other than describing the nature of Nancy's testimony as "inflammatory," Heroildo does not explain how he was prejudiced, particularly where Nancy did not make any allegations against Heroildo, and the only mention of

4

Heroildo in her testimony was confirmatory of where Heroildo lived and where the bedrooms in the home were located.  See Commonwealth v. Cash, 101 Mass. App. Ct. 473, 478 (2022) (no error in joinder where evidence was admissible).

For the first time on direct appeal, Heroildo contends that trial counsel was ineffective for failing to request a curative instruction regarding Nancy's testimony.[5]  He does not, however, claim that trial counsel was ineffective for failing to move to sever docket no. 501.  Generally, to prevail on an ineffective assistance of counsel claim a defendant must demonstrate that, but for his counsel's "serious incompetency, inefficiency, or inattention," Commonwealth v. Saferian, 366 Mass. 89, 96 (1974), "the result of the proceeding would have been different" (citation omitted).  Commonwealth v. Mahar, 442 Mass. 11, 15 (2004).  Here, the defendant cannot meet his burden.  Trial counsel did not request a curative or limiting instruction,[6] and without the benefit of an affidavit from him, we cannot determine whether this was a strategic choice.  "A strategic or tactical decision by counsel will not be considered ineffective assistance unless that decision was 'manifestly unreasonable'

---

[5] The preferred method to raise such a claim is through a motion for new trial filed in the trial court.  See Commonwealth v. Zinser, 446 Mass. 807, 810 (2006).

[6] When asked, trial counsel told the judge it was "simply too confusing for the jury" to receive a limiting instruction.

when made." Commonwealth v. Spring, 94 Mass. App. Ct. 310, 320 (2018), quoting Commonwealth v. Acevedo, 446 Mass. 435, 442 (2006). Moreover, the judge was not required to give a limiting instruction sua sponte. See Commonwealth v. Cruzado, 480 Mass. 275, 279 (2018). Because Heroildo has not established that such an instruction "might have accomplished something material for the defense" (citation omitted), Commonwealth v. Dargon, 457 Mass. 387, 403 (2010), this claim fails.

2. Sufficiency of the evidence of witness intimidation. In assessing the sufficiency of the evidence, the relevant "question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (citation omitted). Commonwealth v. Latimore, 378 Mass. 671, 677 (1979). The defendant contends the evidence of intimidation of a witness was insufficient "where the plain text of the law provides that the victim cannot be intimidated unless an investigation is underway." This question is controlled in all material respects by Commonwealth v. Fragata, 480 Mass. 121 (2018).[7]

---

[7] To the extent that the defendant asks us to hold that the statute includes an element that a criminal investigation has commenced at the time of the alleged intimidation, we decline to do so. Moreover, "we have no power to alter, overrule or decline to follow the holding of cases the Supreme Judicial

"[T]o convict a defendant of witness intimidation under
. . . G. L. c. 268, § 13B (1) (c) (i), the Commonwealth must
prove that (1) a possible criminal violation occurred that would
trigger a criminal investigation or proceeding; (2) the victim
would likely be a witness or potential witness in that
investigation or proceeding; (3) the defendant engaged in
intimidating behavior, as defined in the statute, toward the
victim; and (4) the defendant did so with the intent to impede
or interfere with the investigation or proceeding, or in
reckless disregard of the impact his conduct would have in
impeding or interfering with that investigation or proceeding."
Fragata, 480 Mass. at 122.  "The subsection at issue here
specifically prohibits, in relevant part, intimidation of 'a
witness or potential witness at any stage of a criminal
investigation, . . . or other criminal proceeding of any type.'"
Id. at 124, quoting G. L. c. 268, § 13B (1) (c) (i).  Because
"'[p]otential' means 'capable of being but not yet in
existence'" (citation omitted), id. at 125, the statutory
reference to "'a potential witness at any stage of a criminal
investigation' indicates that the investigation need not have
already begun when the intimidation occurred."  Id.  This is
precisely what occurred here.  Heroildo's nieces were potential

_____

Court has decided."  Commonwealth v. Dube, 59 Mass. App. Ct.
476, 485 (2003).

7

witnesses within the meaning of the statute; he told Julie "don't say anything to anybody," and "don't say anything because you're messing with fire," and he threatened Mandy and told her that he would kill her mother.  Accordingly, the evidence sufficed.

Judgments affirmed.

By the Court (Blake,
Ditkoff & D'Angelo, JJ.[8]),

Clerk

Entered:  November 4, 2024.

---

[8] The panelists are listed in order of seniority.