NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-495

COMMONWEALTH

vs.

ROBERT SANDERSON, SR.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the Superior Court, the

defendant, Robert Sanderson, Sr., was convicted of one count of

assault and battery on a family or household member, in

violation of G. L. c. 265, § 13M (a), and one count of witness

intimidation, in violation of G. L. c. 268, § 13B (b).[1]  This

appeal only concerns the latter conviction which arose from

separate incidents that occurred on July 13, 2021, and August 2,

2021.  The defendant challenges the sufficiency of the evidence

---

[1] The defendant also was charged with kidnapping and strangulation or suffocation.  At the close of the Commonwealth's case, the defendant moved for a required finding of not guilty on the kidnapping charge.  The judge denied the motion, and the jury acquitted the defendant of both kidnapping and strangulation or suffocation.

and contends that the Commonwealth failed to prove that he committed the crime of intimidation of a witness on either day. We conclude that the evidence was sufficient to establish beyond a reasonable doubt that the defendant committed the offense on July 13, but was insufficient to sustain a conviction based on the events which occurred on August 2. Because the jury returned a general verdict, it is not possible to discern the basis on which the jury concluded that the defendant was guilty. Consequently, the judgment of conviction of witness intimidation is vacated and the verdict set aside.

Background. We summarize the evidence presented at trial in the light most favorable to the Commonwealth. See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979). The victim and the defendant began a romantic relationship in September 2018. By the summer of 2021, the two lived in separate residences but were still romantically involved. During the course of the relationship, the defendant introduced the victim to Percocet, which she began to take regularly. Later, the defendant provided the victim with cocaine, fentanyl, and heroin. The victim became dependent on the defendant to supply her with drugs and endured his verbal and physical abuse to protect that supply.

On the morning of July 13, 2021, the victim and the defendant were in the victim's apartment. The defendant had

2

stayed over the night before and when the victim attempted to wake him up, the defendant became angry, shouted profanities, and punched the victim in the face. The ring on the defendant's finger cut the victim's cheek, causing significant bleeding. The victim then left the apartment to drive her eleven year old daughter to a friend's house. She told her daughter that she had fallen and did not disclose that the defendant had hit her. When she returned home, the defendant realized that the victim needed stitches and reluctantly drove her to the hospital.

While en route, the defendant told the victim that she "better not tell [the hospital staff] . . . what happened." He then instructed her to say that she had become dizzy, fallen, struck her head on the counter, and he had found her unconscious. The defendant rehearsed the false story with the victim multiple times on the way to the hospital. While the two were in the emergency room, the defendant remained beside the victim as she repeated the falsehood to medical personnel. At one point the defendant was asked to leave the room while the victim received stitches. He did not go far. He stood outside the door and gestured to the victim in a way that signaled to her that she should continue lying. The victim testified that she lied because she was afraid of the defendant's reaction if she told the truth, which she believed would include him yelling, belittling, and hitting her.

3

A few weeks later, on the morning of August 2, 2021, the victim and the defendant were sitting in her parked car with a third person when a police officer approached them to conduct a wellness check prompted by the victim's mother. The defendant was annoyed and asked the victim "[w]hat the fuck are they here for" and then stated "[y]our Mom is a bitch[,] [s]he called the cops on us." The victim and the defendant were both aware that the mother had filed petitions seeking the victim's involuntary commitment due to her substance abuse and they both suspected that the police were coming to apprehend the victim. The victim got out of her car and spoke to the officer. She told him that she was fine and that her mother was "just making things up." After she returned to the car, the defendant asked, "what did they say to you?" and the victim relayed what she said to the officers. The defendant responded, "[g]ood job getting rid of them." The victim testified that once again she lied because she was afraid of what the defendant might do to her if she told the truth.[2,3]

---

[2] The defendant called two witnesses in his defense -- his son and his sister -- both of whom testified that they had not seen the defendant commit any acts of violence against the victim.

[3] The victim also testified about a separate incident that occurred a few months later in which the defendant allegedly attempted to strangle her. She testified that she felt as though she was going to black out and that it "felt like forever." She did not report that incident to police at the

4

Discussion.  When reviewing the denial of a motion for a required finding of not guilty, we "consider the evidence introduced at trial in the light most favorable to the Commonwealth [to] determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Commonwealth v. Oberle, 476 Mass. 539, 547 (2017).  To sustain a conviction for witness intimidation, the Commonwealth must prove that

> "(1) a possible . . . violation occurred that would trigger a criminal investigation or [criminal or civil][4] proceeding; (2) the victim would likely be a witness or potential witness in that investigation or proceeding; (3) the defendant engaged in intimidating behavior, as defined in the statute, toward the victim; and (4) the defendant did so with the intent to impede or interfere with the investigation or proceeding."

Commonwealth v. Fragata, 480 Mass. 121, 126-27 (2018).

The defendant first argues that the Commonwealth failed to establish that any reasonable juror could find that he intimidated the victim based on the events that occurred on July 13, 2021.  He contends that he did no more than ask the victim to lie and that the absence of evidence of a direct threat or threatening gestures rendered the evidence insufficient to prove

_____

time because she was afraid.  This incident was the basis for the charge of strangulation or suffocation of which the defendant was acquitted.

[4] In 2018, the Legislature amended the statute to include "civil proceeding[s] of any type."  G. L. c. 268 § 13B (b), as amended by St. 2018, c. 69, § 155.

5

that his conduct was intimidating.  This argument is unavailing because it ignores the definition of intimidation and views the evidence in a light favorable to the defendant instead of the Commonwealth.  Contrary to the defendant's assertion, evidence of a direct threat or threatening gestures is not required to satisfy the required element of intimidation.  See Commonwealth v. Carvalho, 88 Mass. App. Ct. 840, 845-846 (2016) (conduct may fall within statute even where defendant's words are not "expressly intimidating, threatening, or harassing" [citation omitted]).  Rather, conduct is intimidating if the "acts or words . . . would instill fear in a reasonable person." Commonwealth v. Rivera, 76 Mass. App. Ct. 530, 535 (2010).  See Commonwealth v. Ruano, 87 Mass. App. Ct. 98, 100 (2015) (question whether certain conduct is intimidating depends on whether defendant "put[s] a person in fear for the purpose of influencing his or her conduct" [citation omitted]).  Here, particularly in light of the defendant's prior verbal and physical abuse, the defendant's threat "not [to] tell [the doctors] . . . what happened" and pressuring the victim to lie could reasonably be viewed as intimidating.  See Commonwealth v. Gardner, 102 Mass. App. Ct. 299, 304 (2023) ("pressuring the victim to recant her allegations against him" qualifies as intimidating behavior under statute).  See also Commonwealth v. Sholley, 432 Mass 721, 725 (2000) ("jury may consider the

6

context in which the allegedly threatening statement was made and all of the surrounding circumstances").

Next, the defendant argues that even if the Commonwealth met its burden of proving that the defendant engaged in intimidating conduct toward the victim, a rational jury could not find that he did so with the intent to interfere with a criminal investigation or proceeding.[5] We disagree. The evidence supported a rational inference that the defendant, having struck the victim in the face causing a serious injury (a laceration requiring nine stitches), was aware that if the victim told the truth to medical personnel, he would be subject to criminal liability. It matters not, as the defendant contends, that there was no pending criminal investigation at that time. See Fragata, 480 Mass. at 125 ("investigation need not have already begun when the intimidation occurred"). The jury could reasonably infer that the defendant's conduct, namely insisting that the victim lie and ensuring by his gestures that she would not reveal the truth, established that the defendant intended to prevent the victim from furnishing information that could lead to an investigation into her injuries. See Ruano, 87 Mass. App. Ct. at 101, quoting Commonwealth v. King, 69 Mass.

---

[5] The defendant does not challenge the sufficiency of the evidence supporting the other elements of the offense with respect to the July 13, 2021, incident.

App. Ct. 113, 120 (2007) ("[a] fact finder may evaluate the circumstances in which the statement was made, including its timing, to determine whether the defendant in fact intended to intimidate the victim").

The defendant also challenges the sufficiency of the Commonwealth's evidence regarding the incident that occurred on August 2, 2021. Although the evidence established that the victim lied to the police about her wellbeing due to her fear of the defendant, there was insufficient evidence that the defendant acted with the "intent to or with reckless disregard for the fact that [his actions] may . . . impede, obstruct, delay, prevent  or otherwise interfere with . . . [a] criminal investigation . . . or any other civil proceeding of any type." G. L. c. 268, § 13B (b). The defendant's statements questioning the arrival of the police and blaming the victim's mother were not aimed at the victim and did not convey any explicit or implicit directive that the victim refrain from speaking with or mislead the police to obstruct a potential civil commitment. At best, the evidence demonstrated only that "the defendant engaged in [nothing] more than abusive speech." Fragata, 480 Mass. at 128. Insulting remarks, even those exacerbated by expletives, do not suffice and we therefore conclude that the Commonwealth did not meet its burden of proof.

8

As previously noted, the jury returned a general verdict. Thus, although the jury was instructed that it must unanimously agree that the Commonwealth had proved that the defendant committed the offense on at least one of the two specific dates,[6] "it is impossible to tell on which [date] the jury relied." Fragata, 480 Mass. at 129. "It is well established in this Commonwealth that a verdict cannot stand unless it appears that the jury reached their verdict on a theory for which there was factual support." Id., quoting Commonwealth v. Plunkett, 422 Mass. 634, 635 (1996).

Conclusion. Accordingly, the judgment of conviction of intimidation of a witness is vacated, and the verdict set aside. Since sufficient evidence was introduced to support a conviction of intimidation of a witness based on the events of July 13, the Commonwealth may retry the defendant as to that incident should

---

[6] The judge instructed as follows:

"If you believe there were acts -- multiple acts of intimidation, you must be unanimously convinced of one of those particular acts . . . . It's not necessary that the Commonwealth to prove or for you all to be agreed that the offense was also committed on other occasions. But you must unanimously agree that the Commonwealth has proved that the defendant committed the offense on at least one of the specific occasions that have been charged."

9

it wish to do so.  The judgment of conviction of assault and battery on a family or household member is affirmed.

So ordered.

By the Court (Vuono, Neyman & Sacks, JJ.[7]),

*Paul Little*

Clerk

Entered:  April 24, 2026.

---

[7] The panelists are listed in order of seniority.